ALICE DAVIS *vs.* JAMES WILSON.

Where a testator, owning land on a stream, devised a portion of it to A., and another portion, situated below, with a mill thereon, to H., " together with the privilege of the stream, so as not to damage the mills " near the testator's house, which were below the land devised to H.; it was held, that the devise to H. did not give him a right as against A., to maintain his dam any higher than it was kept up by the testator, or to build a separate dam in another place.

THIS was a complaint, under the Rev. Sts. *c.* 116. The complainant alleged that she was seized in fee of about two acres of land in Shirley, which were overflowed by means of a dam placed by the respondent across Mulpus brook, " for the purpose of raising a head of water sufficient to work his water-mill there situate ;" and she prayed that a warrant might issue to the sheriff of the county, requiring him to impanel a jury " to ascertain the damages occasioned as aforesaid."

The respondent filed a specification of defence, wherein he claimed the right to maintain the dam mentioned in the complaint, and thereby to flow the complainant's land, without any compensation.

The trial was in the court of common pleas, before *Mellen,* J., whose report of the case stated the following facts : — It appeared that Francis Harris died in October, 1793, being, at that time, and having been for a long time before, seized in fee of about fifty acres of land in Shirley ; that said land is situated on both sides of Mulpus brook, and extends along said brook about one hundred and twenty rods, and from said brook, on the south, to and beyond a highway, called the county road, and on the north of said brook as far as the complainant's land is flowed, and beyond : That said Harris, on the 7th of October, 1793, made his last will, which was proved and allowed on the 15th of said month, and which contained, among other things, the following devises to his two daughters : — " 5th. I give and bequeath to my daughter, Abigail Williams, the house where she now lives, and about two acres of land adjoining the house, bounded on the county road and on land possessed by James Blake, and on Mulpus brook, and

on my own land. I give it to her and her heirs forever. 6th. I give and bequeath to Hannah, the wife of Solomon Pratt, the house where they now live, and all the land I own southerly from the house, bounded northerly on the county road," &c.; " also the blacksmith shop on the north side of the county road, and about half an acre of land adjoining the same, bounded on the north by Mulpus brook, and on the south by the county road, as far east as a great rock beside of the road, *together with the privilege of the stream, so as not to damage the mills near my house.* The above is given to her and her heirs."

The testator devised the residue of his real estate to his son, Francis Harris, Jr.

It also appeared, that the land described in the present complaint is the same that was devised, as above, by said Harris, to Abigail Williams, the complainant's mother; and that it extends about forty rods on Mulpus brook, by which it is bounded on the north; and that about forty-three square rods of the land is flowed by means of the respondent's dam.

It also appeared that Solomon and Hannah Pratt, on the 22d of January, 1828, conveyed to the respondent, by deed of warranty, the land devised to them by the aforesaid will, with all the rights and privileges that were thereby devised to them; and that the respondent has ever since been seized and possessed of the land and privileges : That the respondent's said land, with the dam complained of, is situated on Mulpus brook, below the complainant's land; that there now is, and for some time before the will was made, and ever since has been, a dam across the brook, near where the blacksmith shop stood when the will was made; and the dam is now seven and a half feet high from the bed of the brook. Before and at the time when the will was made, there was a trip-hammer in the blacksmith shop, and the head of water raised by the dam was used to work the trip-hammer.

In 1812 or 1813, one Fairbanks erected another dam across the brook, about twenty-one rods above the old dam. At this time Fairbanks occupied the grist-mill below the blacksmith shop. In 1846, the respondent repaired the dam that

was erected by Fairbanks, and raised it three feet and ten and a half inches above the surface of the water, and it is now kept up, by the respondent, at that height; whereby more of the complainant's land is now flowed, than was flowed in 1793; a part of her land, however, having been flowed by the lower dam. For the flowing of that part of her land, she made no claim for damages. The dam built by Fairbanks is the one complained of; and the respondent admitted that he had no right to raise and maintain it, without paying damages, unless he had such right under the aforesaid will of Francis Harris.

In 1793, when the will was made, most of the testator's land, which is now flowed, was covered with bushes, and was of little value; and there were then, and long before had been, on his land, upon the brook, and below the land now owned by the respondent, a saw-mill, fulling-mill, and grist-mill, owned by the testator, and which were worked by water raised by a dam across the brook, below the respondent's lower dam.

It was contended by the respondent, that the right and privilege, devised to Hannah Pratt, by the will aforesaid, and of which he became the owner in 1828, gave him the right to a reasonable use of the brook, for mill purposes, or for any other purposes, provided he did not, by such use, damage the mills below. But the court instructed the jury that, by virtue of the will, and of the subsequent purchase by the respondent, he, though clothed with all the rights so devised, had not the right to maintain his dam any higher than it was maintained by the testator, (Francis Harris,) nor to build a separate dam in another place. A verdict was returned for the complainant, and the respondent alleged exceptions to the foregoing instructions.

*G. F. Farley* and *F. A. Worcester*, for the respondent.

*E. Buttrick* and *B. Russell*, for the complainant.

Metcalf, J. We are all of opinion that the right instructions were given to the jury. The single question in the case was, whether Francis Harris gave to his daughter Hannah, and to her heirs and assigns, a right to overflow, without paying damages, any more of the land, which he had, by a pre-

vious clause in his will, given to his daughter Abigail, and to her heirs and assigns, than was overflowed when the will was made. So far as the complainant's land was then overflowed, her counsel admit that the respondent may still overflow it, without liability to pay damages : that the devise of the blacksmith shop to Hannah gave her a right to raise the water, as theretofore raised, for the working of the trip-hammer; and that the land devised to Abigail was subject to that right. And so the law probably is. See *Swansborough* v. *Coventry*, 9 Bing. 305; *Canham* v. *Fisk*, 2 Crompt. & Jerv. 126; *Pettee* v. *Hawes*, 13 Pick. 323; *Hathorn* v. *Stinson*, 1 Fairf. 224; *Rackley* v. *Sprague*, 5 Shepley, 281.

The devise to Hannah was of land bounded on the brook, "together with the privilege of the stream, so as not to damage the mills" which the testator owned below the land devised to her. The devise to Abigail (the complainant's mother) was of land bounded on the same brook, above the land devised to Hannah, and a part of it was overflowed, by means of a dam, at the time when the devise was made. Did the testator mean to subject this land to such other servitude as Hannah or her assigns might thereafter be pleased or be able to impose, by means of a dam ?

The position taken by the respondent's counsel was this : That the devise to Hannah is enlarged, by giving to her an easement, created *de novo*, the extent of which easement is the right of using the entire power and capacity of the water of the brook, by artificial means, for its appropriate purposes; subject only to the limitation that she should not damage the lower mills which the testator owned; that the limitation, which is expressed, excludes any implied limitation; and that, by the construction, given by the judge at the trial, the words, " together with the privilege of the stream," are rendered inoperative.

But we cannot perceive any legal ground for holding that an easement, in the land devised to Abigail, was created *de novo*, by the testator's devise to Hannah. When the devise was made, the testator owned not only a blacksmith shop in which a triphammer was worked by water raised by a dam near the shop, but also a grist-mill and other mills below. He first devised

Davis *v.* Wilson.

to Abigail a house, and two acres of land bounded partly on the brook. No condition or restriction was annexed to this devise. He next devised to Hannah a house and certain land, and also the blacksmith shop and half an acre adjoining it, " together with the privilege of the stream, so as not to damage the mills " below the shop. It seems to us, that if he had intended to subject Abigail's land to the easement now claimed, he would naturally have done so, in express terms, either in the devise to her, or in the devise to Hannah. But he did not. And the respondent is obliged to rely, in support of his claim, solely on the implication arising, as he contends, from the devise to Hannah of " the privilege of the stream." But, in our opinion, the testator, by this devise to Hannah, intended rather to restrict her right to the use of the stream, than to enlarge that right. His purpose was, we think, not to give her a right to injure her sister's land above, but to confine her to such a use of the stream as should not injure the mills below, which were devised to her brother.

We do not question the power of a testator to create, by will, an easement, for the benefit of one of his devisees, in the land which he devises to another. He may devise two tenements, and make one of them dominant and the other servient. But he can do this only by using such terms as, on their face, clearly evince such an intention, or such as necessarily imply it. No such intention is clearly evinced by, nor necessarily to be implied from, the terms of Francis Harris's will. All the purposes, which his will manifests, can be effected, without subjecting the complainant to the claim of the respondent. The testator gave his lower mills to his son; the blacksmith shop to Hannah; and land above the shop to Abigail. The mills given to the son were doubtless of more value and importance, in the testator's estimate, than the shop given to Hannah. The testator had owned them all, and had regulated the use of the water, at each, according to his own pleasure. But, as the ownership of the mills and of the shop was to be in different persons, after his decease, he meant to provide that the use of the water, at the shop above, should not be such as to injure the mills below. *Exceptions overruled.*