[No. 2,825.]

# GEORGE BARSTOW v. THE CITY RAILROAD COMPANY.

IMPLIED PROMISE OF CORPORATION — CIRCUMSTANCES AND RELATION OF PARTIES AS EVIDENCE.—In an action against a corporation to recover on a *quantum meruit* for services performed, the situation of the parties at the time, and the relation, if any, in which they stood, of a business character or otherwise, are relevant and material circumstances; and the exclusion of competent testimony, tending to show such circumstances, is error.

SERVICES TO CORPORATION BY DIRECTOR — BY-LAWS AS EVIDENCE. — In an action by Barstow against the City Railroad Company, to recover on an implied promise for alleged services performed by him, while a Director, in going to New York and negotiating a construction contract for the company, where it appeared that the President told him, previous to going, that he should be compensated: *held*, that a by-law of the company, to the effect that Directors should receive no compensation for services as Directors, though traveling expenses might be audited and paid, was relevant testimony for defendant, and its exclusion was error.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

This action was tried by the Court below without a jury, and resulted in a judgment for plaintiff for two thousand five hundred dollars, as prayed in his complaint. A motion for a new trial having been overruled, defendant appealed from the judgment and order.

The facts are stated in the opinion.

*E. J. & J. H. Moore*, for Appellant.

*Barstow, Stetson & Houghton*, for Respondent.

By the Court, WALLACE, J.:

The plaintiff was a Director of the corporation defendant, and alleges that he was employed by defendant, while holding that position, to go to New York and there engage in

CAL. REPS. XLII—59

certain negotiations then pending there between the defendant and one Randall, concerning the execution or modification of a proposed contract between defendant and Randall for the construction of the defendant's projected railroad. It is alleged in the complaint that the defendant promised to pay the plaintiff " for his services and expenditures, including traveling expenses, whatever the same should be reasonably worth, and promised to pay him in gold coin of the United States," etc. The defendant denied the allegations of the complaint.

It was not pretended at the trial that the defendant had, by proceedings at any corporate meeting, directly employed the plaintiff as its agent to proceed to New York upon this business; but it appeared that the plaintiff and one Gladding had already agreed with each other to go to New York from California, in the prosecution of a joint enterprise of their own, into which they had entered for the sale of certain mines and mining interests in the New York market, and that it was in contemplation to sell one of these mines to Randall, the same person who was about to contract to build the defendant's road. Under these circumstances, Barstow had a conversation with the President of the defendant, Dr. Rowell, in which he remarked that he thought of going to New York; that he had some "contingent business" there. Rowell replied: "Then you must go for the City Railroad Company and complete the contract with Randall, or get somebody else to build this road," adding that Barstow should be compensated for his services and expenses. This was in October, 1865, and on the eighteenth day of that month Barstow left San Francisco by the steamer, and arrived in the City of New York on the eighth day of November following. On the twenty-eighth of November—twenty days after Barstow had arrived in New York—a corporate resolution was passed by the defendant, authorizing Barstow and Gladding (then also in the Eastern States)

to close the construction contract with Randall, etc., which resolution, or a copy of it, was forwarded to them from California. Negotiations had there with Randall, up to the time of Barstow's return to California, in March, 1866, resulted in nothing. In the meantime, other persons, not then interested in the stock of the corporation, have become stockholders, and Barstow now claims that the corporation is indebted to him in the sum of two thousand five hundred dollars, for these alleged services at the East in 1865–6.

It is claimed that the circumstances are such as that the law would imply a promise upon the part of the corporation to pay him his claim. It was held in *Pixley* v. *W. P. R. R. Co.*, 33 Cal. 83, that a *quantum meruit* would lie against a corporation for services rendered, and would be supported by proof of circumstances from which a promise to pay might ordinarily be inferred against a natural person.

Even if the cause of action set forth in the complaint here is to be considered to be in this respect altogether of the same character as was that in the case just referred to (a point upon which I am not to be understood to be expressing an opinion now), it is clear enough that the defendant was entitled at the trial to put in evidence all the facts which could be reasonably supposed to throw light upon the question as to whether the plaintiff had really been employed as alleged by him. It was supposed that the conversation already referred to, had between the plaintiff and the President of the defendant, previous to the departure of the former from California in October, 1865, coupled with the corporate resolution of November twenty-eighth following, were circumstances tending to prove the employment alleged—and they were admitted in evidence upon that view. It is evident, however, that the weight and value of such circumstances, when proven, must be affected by a consideration of other and co-existent facts surrounding the transaction. For instance, it appears in this case that the

plaintiff was himself, at the time, a Director of the defendant. That fact in itself tended, and I must consider that the Court below regarded it as tending, in some degree to weaken the presumption of a promise to pay by the corporation defendant. The situation of the parties at the time—the relation, if any, in which they stood of a business character, or otherwise, are important to be known and considered, in order to arrive at a correct solution of the ultimate question involved. In *Murdock* v. *Murdock*, 7 Cal. 511, we said that where the right of the plaintiff to recover rests upon an alleged implied contract, all the circumstances of the case must be considered to ascertain what were the expectations of both the parties as to compensation, etc. In that case the plaintiff sought to recover the value of services rendered the defendants, in the family of the latter, upon an implied contract to pay her therefor. The fact, however, that the plaintiff bore the relation of a stepmother to the defendants at the time the services were rendered was held to be of great import, as tending to overthrow any implication of a promise to pay her for her services. In this view, the fact that the plaintiff was at the time a Director of the corporation was important to be considered, as I have said already. And upon the same principle the Court should have considered if there were any existing general rule or regulation of business in force between the parties, in reference to which they might be supposed to have dealt in the particular instance under consideration. Such a regulation may go far to determine the intention and mutual expectation of the parties at the time of the supposed employment. Upon the trial of this cause the defendant offered in evidence a by-law of the corporation, which provided that no Director should receive any compensation for his services as Director, but that the traveling expenses of the officers and Directors, while actually engaged in the business of the company, might be audited

and paid.   This was excluded as being irrelevant.   In this there was error.   It was not irrelevant.   It tended, in a degree at least, to aid in the determination of the main point in controversy—the alleged employment and promise to pay.   We cannot, of course, know what other circumstances the defendant might have shown in connection with this by-law, had it been received in evidence, nor how far it might of itself have influenced the decision of the cause; but it was a fact upon which the defendant had a right to rely, as tending in a measure to defeat the claim asserted by the plaintiff.   The conversation, which, it is claimed, resulted in an employment of the plaintiff, was had between Dr. Rowell and the plaintiff—they being respectively President and Director of the corporation.   The by-law which was excluded cannot be said to have been irrelevant in an investigation as to how the parties may have understood each other.

I think that the judgment should be reversed, and a new trial had; and it is so ordered.