## WILLIAM A. PEW *vs.* FIRST NATIONAL BANK OF GLOUCESTER.

Essex.   Nov. 5, 1880. — Feb. 24, 1881.   ENDICOTT & FIELD, JJ., absent.

The directors of a bank, at a regular meeting, appointed its president, its cashier and a director, a committee on alterations of a building it had bought, and on which extensive repairs were to be made.  At a subsequent meeting of the board complaint was made that no one was superintending the work, and the president, after consultation with the other members of the committee, and with the knowledge of the directors, but without any other vote having been passed upon the subject, devoted all his time, except what was required for his duties as president, to superintending the work for a period of six months.  If he had not done so, it would have been necessary to have employed a superintendent. *Held,* in an action by the president on an implied promise of the bank, for the value of his services as superintendent, that the facts would not warrant a verdict in his favor.

The directors of a bank by vote fixed the salary of the president at $400 a year. The plaintiff acted under this vote as president for four years, then demanded an increase of salary, and verbally resigned his office.  A committee of conference reported, at a subsequent meeting of the directors, that the plaintiff

would not serve as president unless his salary was $2000; after this report, the directors passed a vote fixing the salary at $400; and, at their next meeting, a vote was passed approving the record of the last meeting; and the plaintiff, in ignorance of these votes, came into the meeting and presided, saying, " A t your request, and upon the assurance that the salary shall be arranged to my satisfaction, I withdraw my resignation." Nothing was said in reply by any of the directors ; and the plaintiff continued to act as president for four months longer, when, there having been no other vote passed fixing his salary, he resigned, and his resignation was accepted. *Held*, in an action by him against the bank, that there was no contract, express or implied, to pay him as salary more than $400 a year.

CONTRACT upon an account annexed, the first item being "for services attending repairs, $300," and the second, "for six months' services to July 1, 1875, $750." Answer, a general denial as to the first item, and, to the second, that only $200 were due, and a tender of that amount. Trial in the Superior Court, before *Gardner*, J., who reported the case for the determination of this court, in substance as follows :

In 1872, the plaintiff was the president of the defendant bank with a salary of $400 a year. In that year, the defendant bought a building, and rebuilt and repaired it at an expense of about $20,000, intending to use a part for its banking-house, and to rent the rest, including stores underneath.

The directors, at a regular meeting, appointed the plaintiff, the cashier and one of the directors, a committee upon the alterations and repairs. While the work was going on, at a meeting of the board of directors, a complaint was made by one or more of the directors that no one was in charge of the work, overseeing it, and that, in the way the work was being carried on, the bank would lose, and that some one should look after it; there was no vote passed by the board appointing any one superintendent, or employing any one as such. The plaintiff asked his associates upon the committee if they, or either of them, would oversee and supervise the work, and they declined so to do because of other business. Thereupon the plaintiff, who was temporarily residing out of town for the summer months, moved into town with his family on August 21, and from that time until February 21 following, when the work was completed, devoted all his time to supervising the work, except what was needed as president of the bank. Twenty men were employed on the work, whose time he kept, and he also approved the bills.

The services rendered were known to all the directors of the defendant; and it would have been necessary for the defendant to have employed a superintendent, if the plaintiff had not performed the services.

The plaintiff admitted that there was no vote of the board of directors entitling him to compensation, and that he was not entitled to compensation as president of the bank, or as a member of the committee appointed by the board of directors; but contended that if the services rendered were valuable, that if, unless done by him, it would have been necessary for the defendant to have employed some other person to perform them, and that if they were rendered under such circumstances as to make it fairly presumable that the defendant, allowing them to be rendered and receiving the benefit from them, expected, or ought to have expected, that they were to be paid for, then the plaintiff could recover what his services were fairly worth.

The judge, against the objection of the defendant, submitted the question to the jury, under full instructions not objected to; and they returned a verdict for the plaintiff.

As to the second item, the plaintiff offered evidence tending to show that he had acted as president of the defendant bank from its organization in 1864, by successive annual elections; that he had received an annual salary, at first of $200, and, since 1871, of $400; that, at the annual meeting in January 1875, he was elected a director, and, at a subsequent meeting of the directors, he was reëlected president; that he at that time, before he was elected, stated to the directors, at their meeting, that he should not serve any longer in the capacity of president at a salary of $400 a year, nor unless it was fixed at a much larger sum than he had been receiving, giving as a reason that it occupied his whole time, and he could not afford to do it; that he was elected president, said nothing, was sworn, and entered upon the duties of his office; that within a fortnight of that time he verbally resigned his office, at a meeting of the directors, stating as his reason that his salary had not been arranged; and his resignation was laid upon the table, and a president pro tem. elected; that he left the meeting, and, within a few days a committee of the directors had an interview with

him, and subsequently reported to the board, at a meeting at which he was not present, on February 4, 1875, that the plaintiff would not withdraw his resignation (which had not been accepted), and consent to be the president, unless his salary was fixed at a sum of not less than $2000. It also appeared in evidence, that at this meeting of February 4, 1875, after the report of the committee was made, the board passed a vote fixing the president's salary at $400. The plaintiff testified that he never had any knowledge of this vote until after his final resignation in June, and had no knowledge of the vote of the board passed February 9. It was in evidence that both votes were upon the record-book of the directors, which was open to the inspection of the plaintiff from February to July, and that the several records of the meetings at which he presided were signed in the record-book by him. It appeared that at the next meeting of the board, February 9th, the record of February 4th was approved by vote; that one of the directors came to the plaintiff and requested him to return and attend the meeting, giving him certain assurances; that he acceded to this request, came into the meeting and took his ordinary place as president, saying as he did so, "At your request, and upon the assurance that the salary shall be arranged to my satisfaction, I withdraw my resignation;" that nothing was said by any of the directors; that after this he continued to act as president, devoting substantially, as he testified, his whole time to the business of the bank, until the end of June. On June 9, there having been no other vote fixing his salary, he resigned his office, to take effect July 1, 1875, and his resignation was accepted.

It also appeared that in January 1871, the directors passed a vote fixing the president's salary at $400 for that year, and that no other vote fixing the salary was passed until February 4, 1875, and that the plaintiff drew his salary of $400 from January 1871 until January 1, 1875.

Upon all the evidence, the plaintiff contended that, if believed by the jury, he might recover upon an implied contract; and that, if he withdrew his resignation and consented to serve as president, upon the understanding and agreement that the directors should fix his compensation in such mode as should be satisfactory, and they failed to do so, or to pass any vote on the

subject, the jury might find an implied promise to pay what the services were reasonably worth.

The judge ruled otherwise, and instructed the jury that the plaintiff could only recover $200 on this item, and, it being agreed that this sum had been duly tendered, he could recover nothing. The jury returned a verdict accordingly.

If the evidence admitted, against the defendant's objection, upon the first item, was wrongfully admitted, or if, upon all the evidence the plaintiff could not recover upon this item, the verdict was to be set aside upon this item; if the plaintiff was entitled to go to the jury on the evidence as to the second item, a new trial was to be had on that item only; if the several rulings were correct, judgment was to be entered upon the verdict.

*S. B. Ives, Jr.*, for the plaintiff.

*C. A. Benjamin*, for the defendant.

MORTON, J. The plaintiff admits that no express contract to pay him for his services was made by the directors, either by vote or otherwise ; but contends that the services were valuable to the bank, and were rendered under such circumstances that there was an implied contract to pay a reasonable compensation for them.

A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But, in any case, the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. Thus, directors of banks and of many other corporations usually receive no compensation. In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for ; or, at least, that the circumstances were such that a reasonable man in the same situation with the person who receives and is benefited by them would and

ought to understand that compensation was to be paid for them *Sawyer* v. *Pawners' Bank*, 6 Allen, 207.

In the case before us, the plaintiff admits that he is not enti-tled to recover anything beyond his salary for services rendered as president or as a director; but contends that, in doing the work, he was acting, not in his capacity of president or director, but in an independent relation to the bank, as a superintendent of repairs. The directors appointed the plaintiff and two other persons a committee on repairs. They did not then or at any time afterwards appoint or recognize the plaintiff as superintend-ent of repairs. Nothing was said in their votes as to compen-sation of the committee; and there is no evidence that anything was said, throughout the transaction, by the plaintiff or any of the directors in regard to his being entitled to or receiving any compensation. It seems to us that the only reasonable infer-ence from all the evidence is, that it was intended and under-stood by the parties that the plaintiff was acting throughout as a member of the committee, without compensation. There is no evidence whatever that any members of the board of directors understood, or ought to have understood, that he was acting in any other capacity, or that he then made any such claim. A majority of the court is therefore of opinion, that the evidence did not justify the verdict upon the first item in the plaintiff's account.

The second item of the plaintiff's account is for $750 for his salary as president for six months ending June 30, 1875. In regard to this, the Superior Court rightly ruled that he was not entitled to recover. In 1871 the directors by vote fixed the salary of the president at $400 a year. The plaintiff acted under this vote as president until 1875. He then demanded an increase of salary, and verbally resigned his office. The direc-tors laid the subject of his resignation upon the table, and appointed a committee to confer with him. The committee reported, at a meeting held February 4, 1875, that the plaintiff would not serve as president unless his salary was $2000; after this report, the directors passed a vote fixing the salary at $400. This was equivalent to an express refusal to increase his salary, as requested by him. At the next meeting of the directors, on February 9, 1875, a vote was passed approving the record of the

meeting of February 4, and the plaintiff came into the meeting and presided, saying, "At your request, and upon the assurance that the salary shall be arranged to my satisfaction, I withdraw my resignation." Nothing was said in reply by any of the directors, and the plaintiff continued to act as president until June 9, 1875, when, there having been no other vote passed fixing his salary, he resigned, and his resignation was accepted.

The burden of proof was upon the plaintiff to show that the defendant had, by an express or implied contract, agreed to increase his salary. Instead of showing an express contract, the evidence shows an express refusal by the directors to make such a contract. It is also clear that there was no implied contract. The plaintiff testified that he did not know of the vote of February 4, when he resumed the duties of president. But if this be so, he had no right to assume that the directors had taken any action increasing the salary. Indeed, it is apparent that he understood that they had not done so; for what he said upon resuming his duties as president was an expression of his expectation that they would take some action in the future upon the subject of his salary. The fact that the directors made no re ply does not fairly lead to an inference that they understood, o ought to have understood, that thereafterwards he was entitlea to a larger salary than the sum fixed by their vote. There was no agreement, express or implied, that he should have more. He chose to perform the duties under the expectation that his salary would be raised by the future action of the directors; but the only legal obligation of the defendant was to pay him the amount of salary he had theretofore received, and which was fixed by the vote of February 4.

We are all of opinion that the instructions of the presiding justice upon this item were correct.

*New trial ordered upon the first item only.*