[S. F. No. 1366.  In Bank. — May 9, 1901.]

## A. C. BASSETT and CONSOLIDATED BITUMINOUS ROCK COMPANY, Respondents, v. J. A. FAIRCHILD et al., Appellants.

Corporations — Action by Stockholders — Expenses of Litigation — Finding — Appeal — Specification not Discussed in Brief. — In an action by the stockholders of a corporation to compel the restitution, by the majority of the directors of the corporation, of moneys which were alleged to have been illegally expended by them, a finding that they had paid expenses of a litigation against the corporation which ought to have been borne by them individually, will not be disturbed upon appeal, under a specification of insufficiency of the evidence, which is not discussed in the appellants' brief.

Id. — Meeting of Directors — Quorum not Formed by Interested Person. — At a meeting of the directors of a corporation, a legal· quorum cannot be formed by the presence of an interested director, so as to authorize or ratify any action taken in his favor as general manager.

Id. — Services Rendered by Director and Vice-President as Manager — Absence of Contract or Resolution — Payment of Reasonable Value — Credit. — A person chosen as a director and also as vice-president and manager of the corporation, without any express contract, by-law, or valid resolution, fixing compensation for his services as manager, who performed numerous and onerous services as manager, which occupied his entire time, and which were highly valuable, and of such a character as to preclude any reasonable supposition that they were intended to be gratuitous, was entitled to be paid the reasonable value thereof; and in an action by a minority of the stockholders to recover an amount of money paid him as manager from the funds of the corporation without any valid resolution for such payment, in the absence of proof of fraud or gross negligence of the directors defendant, they are entitled to be credited with the reasonable value of the services rendered. [Harrison, J., Temple, J., and Beatty, C. J., dissenting.]

Id. — Presumption of Gratuitous Services of Director, when Inapplicable — Implied Contract for Other Services. — The presumption that directors of corporations render their services gratuitously, in the absence of a previous express contract, does not apply to onerous services, not pertaining to the office of director, which could not reasonably be expected to be performed for nothing, although no compensation therefor was previously fixed; and in such case there is an implied agreement to pay what the services were reasonably worth. [Harrison, J., Temple, J., and Beatty, C. J., dissenting.]

ID. — EVIDENCE — TESTIMONY OF MANAGER — PROFITS OF MINING COR-
PORATION — ROYALTIES — EXPECTED DIVIDENDS. — In the action by
the stockholders, it was error to exclude the testimony of the man-
ager, whose compensation depended largely upon the development
of a mining corporation, which he was to control as manager, that,
in addition to royalties per ton, anticipated by the organizers of
the corporation, it was designed, intended, and expected by the
directors that there would be large earnings or dividends.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco and from an order denying a
new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court and in the
dissenting opinion.

Frank Shay, and C. H. McFarland, for Appellants, other
than George M. Perine.

C. H. Wilson, and E. W. McKinstry, for George M. Perine,
Appellant.

Gunnison, Booth & Bartnett, for Respondents.

McFARLAND, J. — The following parts of the opinion de-
livered in this case in Department Two, July 2, 1900, are
hereby adopted: —

"It is averred in the complaint that each of the plaintiffs
is the owner of at least five shares of the capital stock of
the corporation defendant, the Bitumen Consolidated Mining
Company, the capital stock being three hundred thousand
dollars, divided into shares of one hundred dollars each,
and that this action is brought on behalf of themselves and
other stockholders.   It is also averred that during the times
when the alleged wrongs were committed, defendants Fair-
child, Perine, Walrath, and Miles were directors of the
corporation defendant, — the whole number of directors be-
ing six, and the other two being plaintiff Bassett and one
Swift.   It is further averred that said defendants, being a
majority of the board of directors, improperly expended certain
moneys of the corporation; and the purpose of the action is to
recover from them the amount of money alleged to have been
thus expended.   The court rendered judgment against Fair-
child, Perine, and Walrath for $10,729.90, which sum consists
of $8,665.80 found to have been improperly expended, and

legal interest thereon for several years; and against defendant
Miles for $7,129.90 for money, and interest thereon, found to
have been improperly expended by the directors by acts in
which he participated. From the judgment and from an order
denying their motion for a new trial the defendants appeal.
The court found the appellants liable for $1,888.05, paid out
by them as expenses incurred in defending a certain action
brought in the superior court by the San Luis Bituminous Rock
Company against the defendant corporation herein and certain
others of the individual defendants herein. The ground of
this finding is, that, owing to the nature of that action, the de-
fendants therein, other than the corporation, should have
borne the expenses of the litigation, and as this finding is not
discussed in appellants' brief it may be dismissed without
further notice.

"The chief item of appellants' liability allowed by the court,
which is contested by appellants, is $6,475 paid defendant
Fairchild for services as general manager of the corporation
defendant before his compensation therefor had been fixed,
which sum, with interest thereon, makes up the main amount
of the judgment. The record shows that after the case had
been submitted to the trial court, that court made an order on
August 29, 1896, that judgment be entered for plaintiffs for
$1,888.05 alone. (In a written opinion attached to one of ap-
pellants' briefs the learned judge of the lower court gives his
reasons, which we think are exceedingly cogent, for not allow-
ing judgment for the $6,475 paid to Fairchild.) But after-
wards the court made findings and ordered judgment for the
$6,475 and interest, in addition to the said $1,888.05, and,
under an amendment to the complaint, gave judgment, also,
for an additional $332.25, which will be referred to hereafter,
and ordered that $2,000 be allowed plaintiffs as a counsel fee,
to be paid out of the judgment by a receiver who was appointed
to collect the same.

"There is no averment, or proof, or finding of any fraud
committed by appellants; but the theory of the complaint
seems to be, that in authorizing the payment of the said
money to Fairchild the appellants acted with gross negligence.
The appellants admit the payment of this money, and justify
it. The findings seem to follow the theory of the complaint;
but so far as they may be construed to find that appellants
were guilty of such negligence as would render them liable on

the ground of negligence alone, or that they willfully intended
to injure the corporation for their own personal gain, they are
not supported by evidence. However, the findings on these
points need not be closely scrutinized; for the order denying
the motion for a new trial contains this language: 'There is no
evidence in this case that either of the defendants Perine,
Walrath, or Miles acted for their own private gains. If any
finding bears that construction, I regret it, and if it were ne-
cessary to support the judgment, I would grant a new trial.
Neither, under my views of the law, *is the finding as to negli-
gence material.* Perine, Walrath, and Miles are held liable
upon the ground that they voted money of the corporation to
Fairchild *without authority of law.* If it be assumed that
the corporation was indebted to Fairchild for past services,
*none of the defendants* are liable for the money paid to him.
. . . Upon the main question whether Fairchild had any legal
claim for compensation *before his salary was fixed* by the board,
I see no reason to change the views expressed by me in decid-
ing the case.' It is apparent, therefore, that the judgment
was based on the principle that the payment of the money to
Fairchild was unlawful because it was paid before his salary
as general manager had been fixed, and that—as will be seen
hereafter—it was so entirely illegal and *ultra vires* that it
could not be ratified nor made valid by any subsequent act of
either the directors or the stockholders.

"The corporation defendant was organized in September,
1891. Its main purpose was to control the mining and mar-
keting of bituminous rock to be taken from several different
mines or deposits of bitumen. It appears that these several
mines were mainly owned by the persons who formed the cor-
poration defendant, and became its stockholders and directors.
The corporation took leases from the owners of these several
mines, by the terms of which it was to give them a royalty of
one dollar a ton for every ton of bitumen taken from the mines.
It seems quite apparent that the main profit which the organ-
izers of the corporation expected to receive was to come through
the royalty of one dollar per ton to be paid for the rock taken
from the mines which they owned; and, in this connection, we
think that the court erred in sustaining an objection to the ques-
tion asked Fairchild on the witness-stand, whether, at the
time of the organization of the corporation, 'it was designed,
intended, or expected by the directors of the Bitumen Consoli-

dated that, outside of the royalties, there would be large earnings or dividends.' Immediately after the organization of the corporation, and in September, 1891, Fairchild was duly elected vice-president and general manager, and remained such during the time mentioned in the complaint. He immediately commenced to perform his duties as general manager, which duties were numerous and onerous, and occupied almost his entire time. The various kinds of work which he did as manager fully appear in the evidence, and need not be here given in detail; it is sufficient to say that his work included direction and supervision of the mining operations in the various leased mines; the supplies required; contracting for hauling rock from mines to cars; purchasing sacks for the rock; attending to shipping-receipts and collecting moneys; securing transportation facilities; chartering vessels for shipping rock to points on the northern Pacific coast; seeing that cars which came to San Francisco were properly loaded and delivered in proper shape to purchasers; looking after office management, and attending to all 'business of the corporation which came along from day to day.' Before his employment he had visited points as far north as Vancouver, British Columbia, in the interest of the use and sale of bituminous rock, and had become acquainted with public officials and others having control of street-paving, and was thus enabled to procure contracts with them for sale of the rock of the corporation. There is no doubt that his services were highly valuable, and there is no doubt that they were of such a character as to preclude any reasonable supposition that they were to be gratuitous. But there was no resolution of the board of directors and no express contract determining what compensation he should have for his services as manager, prior to November 9, 1892; and for this reason it is contended by respondents that he cannot legally have any compensation prior to that date. Fairchild expected to receive compensation for his work as manager, the amount to depend somewhat upon the volume of business that would be developed, and the testimony of Walrath, president, and Perine, treasurer of the corporation, shows that it was not expected by them or the other directors that he was to work gratuitously; moreover, his work as manager was done with the knowledge of the directors, but there was no formal action taken on the subject until November 9, 1892. Some time be-

fore that date, the president paid Fairchild, on account of his services, out of the money of the corporation, three thousand six hundred dollars; and on November 9, 1892, the board of directors passed a resolution which, after reciting that Fairchild had been in the employ of the corporation since its organization 'as managing agent and manager,' and had been paid by the president three thousand six hundred dollars for his services, declared that 'the acts of said president in advancing and paying said J. A. Fairchild said sum of thirty-six hundred dollars on account of his services be and the same is hereby approved, ratified, and confirmed.' There were present at this meeting four directors, who constituted a quorum; Fairchild was one of the four, but he did not vote on the resolution which was passed by the votes of the other three. At this same meeting a resolution was passed, reciting that Fairchild had been elected general manager in September, 1891, and had ever since been acting as such without having his salary fixed, and declaring that his salary 'be and the same is hereby fixed at the monthly sum of two hundred dollars per month from November 1, 1891, to April 1, 1892, and that thereafter he should receive a salary of seven hundred and fifty dollars per month, which should remain the same until changed by the board of directors.' On the tenth day of January, 1893, there was a general meeting of the stockholders. At this meeting there were present stockholders representing 2,510 shares of the capital stock of 3,000 shares; and by a resolution adopted by a majority of the shares, exclusive of those represented by Fairchild, it was resolved 'that all the acts of the board of directors and officers of this company for the past year be approved and ratified.'

"The by-laws provide that 'the compensation and terms of office of all officers of the corporation (other than directors) shall be fixed and determined by the board of directors.' This language does not, on its face, mean that the compensation must be expressly and definitely agreed upon and settled before performance of the services; but respondents contend that under the general law established by judicial decisions there can be no lawful allowance to an officer of a corporation for services, no matter what their character and value, where the amount of the compensation had not been fixed prior to the rendition of the services. Many authorities on this subject have been cited on both sides, and they are to some extent

conflicting. Most of those cited by respondents merely declare the rule that a 'director' *as such*, without some previous understanding, is not entitled to pay for services which are within the ordinary duties to be expected of him as director, although some of them, no doubt, apply the rule to other officers or agents who are also directors; but as to the last proposition the weight of authority and reason is the other way.

"As a general rule, when one person performs valuable services for another, whether the other be a corporation or a natural person, the law raises an implied promise to pay a reasonable compensation for the services, unless they are performed under circumstances which show an understanding that they were to be gratuitous. It frequently happens that one natural person performs valuable services for another natural person for which the former cannot recover, because circumstances show that they were rendered without any expectation of compensation. Now, it has been held that directors of corporations cannot, without previous express contract, receive compensation for such ordinary services as are usually rendered by directors without pay, for the common understanding, as declared by judicial decisions, is, that such services are presumed to be rendered gratuitously. But that presumption does not apply to those onerous services performed by officers and agents of a corporation, though they be also directors, for which compensation is usually demanded and allowed, and which could not reasonably be expected to be performed for nothing. The correct rule is stated by the United States supreme court in *Fitzgerald etc. Const. Co.* v. *Fitzgerald*, 137 U. S. 98. In that case, Fitzgerald, who was a director of a corporation and its treasurer, acted as superintendent and general manager, and, as such, did valuable work 'not at all pertaining to his office as director,' and the question was, whether he was entitled to compensation for such work done before any compensation was fixed. The opinion of the court states that the trial court 'instructed the jury that "if Fitzgerald, the plaintiff, acted as superintendent, treasurer, or general manager of said company, and transacted the usual business that devolves upon such officer of such a concern as that, with the knowledge and consent of the defendant" (during the time before compensation was fixed), there would be an implied agreement on the part of the defendant to pay

what the services are reasonably worth, and afterwards repeated this instruction more in detail, confining it to services as manager.' The verdict was for Fitzgerald, and the judgment was affirmed. The court said: 'The general rule is well stated by Mr. Justice Morton (since chief justice of Massachusetts) in *Pew* v. *First Nat. Bank etc.*, 130 Mass. 391, 395: "A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But, in any case, the mere fact that valuable services are rendered for the benefit of the party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. Thus directors of banks and of many other corporations usually receive no compensation. In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for; or, at least, that the circumstances were such that a reasonable man, in the same situation with the party who receives and is benefited by them, *would and ought to understand that compensation was to be paid for them.*" Tested by this rule, we think that the court fairly left it to the jury to determine whether Fitzgerald rendered services of such a character and under such circumstances that he was entitled to claim compensation therefor. *It could not properly have been held, as matter of law, that he was not so entitled.'*

"*Rogers* v. *Hastings etc. Ry. Co.*, 22 Minn. 25, is a case directly in point. It is stronger in support of the proposition above stated than the case at bar, because the charter of the corporation in that case provided that the board of directors should appoint the officers 'and fix their compensation for the services *to be rendered.*' Rogers was a director, and was appointed secretary of the corporation, and also acted as its land commissioner and attorney, and sued for the value of services rendered in such capacities. There had been no compensation fixed, nor any contract made, before the services were rendered; and it was contended there, as here, that no compensation could be recovered for past services. But it was held

otherwise. The court said, among other things, as follows: 'The evidence showed that the plaintiff, while acting as land commissioner, was a member of the board of directors. If his services as land commissioner had been performed by him simply *as a director*, it might be that he could not recover for the same, since, in the absence of a special agreement for compensation, he would, according to many authorities, be presumed to have acted gratuitously. But the duties and labors of a land commissioner of a land-grant railroad company do not necessarily nor presumptively pertain to a director as such. Indeed, it would be unreasonable to suppose that duties so onerous would be undertaken by one acting simply as a director without pay. For such extraordinary services, outside of and beyond his duties as director, a party may certainly recover, notwithstanding his directorship, for the reason that, even if he performs the duties of director gratuitously, these services are not a part of those duties.' (Citing cases.)

"In *Henry* v. *Rutland etc. Ry. Co.*, 27 Vt. 435, there was a standing resolution of the board that a director should not receive more than two dollars per day for special services, yet a director was allowed to recover for services which were outside his duties as a director, in an amount much greater than could have been allowed under the resolution for services as director. The court said: 'There are services which may be rendered for the benefit of a corporation, the performance of which may be delegated by the directors to other persons. For that purpose the directors may employ, as their agents, those who are not members of the corporation, or they may employ one of their own number. A director is not incapacitated to discharge those duties and receive the same compensation which other agents would be entitled to recover. . . . In rendering those services the plaintiff was not acting in his official capacity as director, but as the agent of the corporation, and his compensation is no more limited by that vote than it would be if the services had been rendered by others who were not directors.'

"In *Sawyer* v. *Pawners' Bank*, 6 Allen, 209, the court, speaking of the circumstances under which the presumption arises that officers of a corporation are to be paid for their services, says: 'Such a presumption arises in reference to any species of work, labor, or employment which is usually and commonly the subject of hire and reward, and paid for, whether any specific bargain is or is not made concerning it.'

"In Beach on Private Corporations (sec. 208), the author says: 'When the charter of a corporation provides that certain officers may be elected, and their salary fixed by a board of directors, and a president is thus elected, but without a salary named, the law raises an *assumpsit* on the part of the corporation to pay a reasonable compensation for his services rendered after election.' In Morawetz on Private Corporations (sec. 508), the author says: 'If a director is properly employed to perform services which do not pertain to his office as director, he is entitled to such compensation as has been agreed upon, *or as the services are reasonably worth.*'

"There are many other authorities to the same effect as those above cited, but they are too numerous to refer to here. (See Angell and Ames on Corporations, sec. 317; *Pew* v. *First Nat. Bank etc.*, 130 Mass. 391; *Chandler* v. *Monmouth Bank*, 13 N. J. L. 255; *Shackelford* v. *New Orleans etc. R. R. Co.*, 37 Miss. 202; *Santa Clara Mining Ass'n* v. *Meredith*, 49 Md. 389;[1] *Cheeney* v. *Lafayette etc. Ry. Co.*, 68 Ill. 570;[2] *First Nat. Bank* v. *Drake*, 29 Kan. 311;[3] *Severson* v. *Bi-Metallic etc. Co.*, 18 Mont. 13; *Felton* v. *West Iron Mountain Min. Co.*, 16 Mont. 81.)

"There was nothing decided in *McCarthy* v. *Mount Tecarte L. & W. Co.*, 111 Cal. 328, that conflicts with the views hereinbefore stated. There the plaintiff, who was a director of the corporation defendant, sought to recover of the latter the value of services rendered without any previously fixed salary or compensation; and a judgment in his favor was reversed, merely because the trial court had erroneously excluded evidence offered by the defendant which 'tended to show the relations of the parties, . . . and to throw light on the question whether or not it was intended that he should have compensation.' The court referred to *Barstow* v. *City R. R. Co.*, 42 Cal. 465,—which was also an action brought by a director to recover for services rendered before his compensation had been fixed,—and quoted from the opinion in the latter case as follows: 'The situation of the parties at the time—the relations, if any, in which they stood, of a business character, or otherwise—are important to be known and considered, in order to arrive at a correct solution of the ultimate question involved.' In neither the McCarthy case nor the Barstow case is there anything in the nature of a decision that there cannot be a re-

---

[1] 33 Am. Rep. 264.          [3] 44 Am. Rep. 646.

[2] 18 Am. Rep. 584.

covery by an officer of a corporation, who is also a director, unless his salary had been previously fixed, but the contrary in both cases is assumed and necessarily decided. In the McCarthy case it is assumed that plaintiff could have recovered on 'an implied contract arising out of and inferable from the situation and relation of the parties'; and it is further said, that 'respondent, being a director of appellant, was not entitled to compensation for services rendered the corporation, unless the circumstances were such as to raise an implied *assumpsit* to pay what they were reasonably worth.'

"We conclude, therefore, upon the authorities above noticed, as well as upon reasonable and just principles, that Fairchild was not precluded from having a legal claim for the value of his services, merely because that value had not been fixed beforehand."

In the opinion delivered in Department it was held that the allowance of Fairchild's claim by the board of directors on November 9th was valid, notwithstanding the fact that the presence of Fairchild was necessary to constitute a quorum, and that, at all events, the allowance was an act that could be ratified by the stockholders, and that it was so ratified on January 10, 1893, as above stated. Since then it has been held, in *Curtin* v. *Salmon River etc. Co.*, 130 Cal. 345,[4] that there is no legal quorum of directors present when action is attempted to be taken on a matter as to which one of the directors necessary to make the quorum is interested. Assuming this to be the established law on the subject, and that, therefore, the resolutions of November 9th were invalid, and assuming also that the invalid action of November 9th could not be ratified by the stockholders, still, under the above views, Fairchild was entitled to receive compensation upon *quantum meruit* for whatever his said services were reasonably worth, and appellants should be credited in this action with an amount of money equal to the value of said services. (*Buck* v. *City of Eureka*, 109 Cal. 522.) In the latter case it was declared that the plaintiff should be allowed to amend his complaint, if so advised. In the case at bar an amendment would hardly be necessary, as the facts supporting a *quantum meruit* are fully stated; but if appellants be advised to amend their pleading in that respect, they should be allowed to do so.

---

[4] 80 Am. St. Rep. 132.

It is contended by appellants that after the case had been submitted the court made orders allowing an amendment setting up a claim for about three hundred dollars for an entertainment to the board of supervisors of San Francisco at one of the mines (which appellants claim to have been legitimately expended in furtherance of the interests of the corporation), and an amendment setting up a claim for counsel fees of two thousand dollars, alleged to be reasonable, and also an order that these amendments "are deemed to have been by defendants denied," and that these orders were erroneously made. The record, however, does not clearly show that these things occurred in the manner asserted by appellants; and as a new trial is to be ordered, it is not necessary to consider them. Of course, appellants should be allowed to contest these new items of the entertainment and the counsel fees. The reasonableness of the counsel fees which were allowed need not be passed upon; the finding as to that may be different on another trial.

The judgment and order appealed from are reversed and the cause is remanded for a new trial.

Van Dyke, J., Henshaw, J., and Garoutte, J., concurred.

HARRISON, J., dissenting.—The plaintiffs bring this action as stockholders in the Bitumen Consolidated Mining Company, a corporation, one of the defendants, to · recover from the other defendants, for the benefit of the said corporation, certain moneys alleged to have been illegally misapplied and withdrawn by them from the corporate funds of said corporation while acting as its directors. Judgment was rendered against the defendants, and they have appealed.

The defendant corporation was organized under the laws of this state, in 1891, with a board of six directors, and a capital stock of three hundred thousand dollars, divided into three thousand shares. The defendants Fairchild, Walrath, and Perine were directors of the corporation from its organization until the time of the commencement of this action (July 21, 1893). The defendant Miles was elected a director, November 1, 1892, and thereafter acted as such director. The other two directors were the plaintiffs Bassett and Swift. The by-laws of the corporation were adopted at the time of its organization in 1891, and provide as follows:—

"The officers shall be a president, vice-president, secre-

tary, and treasurer, which officers shall be elected by and hold office during the pleasure of the board of directors. The vice-president shall be the manager of the corporation. The compensation and tenure of office of all officers of the corporation (other than directors) shall be fixed and determined by the board of directors."

"The board of directors shall, at their first regular meeting, elect one of their number to act as president; and if at any time the president shall be unable to act, the vice-president shall take his place and perform his duties; and if the vice-president, from any cause, shall be unable to act, they shall appoint some other member of the board to do so, in whom shall be vested for the time being all the duties and functions of his office."

"The vice-president, in addition to the duties imposed upon him in article 7 (that is, when acting in place of the president), shall be the manager of the corporation, and shall perform such duties as may be prescribed from time to time by the board of directors."

At the organization of the corporation, Walrath was elected president, Fairchild vice-president and manager, and Perine treasurer of the corporation, and they continued to hold those offices until the commencement of the action.

The court rendered its judgment against the appellants, upon its finding as facts in the case, that they had mismanaged and illegally applied the funds of the corporation in the following particulars: In paying to the defendant Fairchild the sum of $6,475 for services rendered by him as manager of the corporation prior to November 9, 1892; in paying $1,888.05 for the expenses of certain litigation for the benefit of the defendants Fairchild and Walrath, and in which the said corporation had no interest; in paying $332.25 for the entertainment of certain San Francisco supervisors at a clam-bake in San Luis Obispo County.

The court finds that during all the time covered by these transactions the corporation was under the control and management of the four defendant directors, and that the aforesaid payments were made under their direction, and that the plaintiffs Bassett and Swift protested and objected to the said payments, and at no time ratified or sanctioned the same. The payment of these sums of money out of the corporate funds, under the direction of the defendants, is not contro-

verted, but they contend that they had authority to make them.

The facts connected with the payment of the money to Fairchild are as follows: As before stated, Fairchild was elected vice-president at the organization of the corporation, and by virtue thereof acted as its manager, under the provision of the aforesaid by-law, and rendered various services to the corporation. It was provided in the by-laws that the funds of the corporation should be deposited in bank, and should be paid out only by the check or order of the president, countersigned by the secretary. October 11, 1892, Walrath, with the consent of the defendant Perine, withdrew from the funds of the corporation $3,600, in disregard of this provision of the by-law, and without having the check therefor countersigned by the secretary, and paid the same to Fairchild for services rendered by him as vice-president and manager. November 9, 1892, the defendants Walrath, Fairchild, Perine, and Miles held a meeting of the directors, — the other directors, Bassett and Swift, plaintiffs herein, not being present, — and caused the following resolution to be entered upon their records: —

"Whereas, J. A. Fairchild has been in the employ of the Bitumen Consolidated Mining Company since its organization, as its managing agent and manager; and

"Whereas, He has been paid by authority of the president thirty-six hundred dollars on account of the services rendered for the company;

"Therefore, be it resolved, That the acts of said president in advancing and paying the said J. A. Fairchild said sum of thirty-six hundred dollars on account of his services be and the same is hereby approved, ratified, and confirmed."

At the same meeting they also caused the following resolution to be spread upon their minutes: —

"Whereas, J. A. Fairchild was, on September 1, 1891, duly elected by this board of directors vice-president and general manager of this company, and has continued to act as such general manager, and no salary for the services have been fixed;

"Now, be it resolved, That the salary of J. A. Fairchild as general manager of this company be and the same is hereby fixed at the monthly salary of two hundred dollars per month from November 1, 1891, to April 1, 1892, and that thereafter, to wit, from the first day of April, 1892, he shall receive as general manager of this company a salary of seven hundred

and fifty dollars per month, and remain the same until changed by the board of directors."

These resolutions were adopted by the votes of Walrath, Perine, and Miles. Fairchild, although present, did not vote upon the adoption of either of them. Under this resolution there was paid to Fairchild, as and for his salary for services rendered prior to November 9th, the sum of $2,875, aside from the sum of $3,600 which had already been paid to him by Walrath. At a general meeting of the stockholders, held January 9, 1893, at which there were present the holders of 2,510 shares of stock, a resolution was adopted, "that all the acts of the board of directors of this company for the past year be approved and ratified." 1,510 votes were cast in favor of the resolution, and 1,000 votes against it. The plaintiff Swift voted 1,000 shares against its adoption; and of those voting in its favor, the defendant Fairchild represented 500 shares, Perine represented 485 shares, Walrath, 500 shares, and Miles, 10 shares.

1. That the action of Walrath in withdrawing three thousand six hundred dollars and paying it to Fairchild without any authority from the board of directors, and in disregard of the by-laws of the corporation, was a violation of his duty as director, as was also the act of Perine in consenting thereto, and of Fairchild in receiving the money, is not open to question, and has not been contended for by the appellants. No validity was imparted to this act by the resolution adopted at the meeting of November 9th. At that meeting there were present only four directors, and Fairchild was one of this number. Although he abstained from voting, there was not a competent majority of the board at that meeting to bind the corporation. The resolution then adopted, ratifying the act of Walrath in making the payment, was not, therefore, valid as a corporate act, and the resolution purporting to fix the salary of Fairchild was equally invalid for the purpose of creating any obligation against the corporation. (*Curtin* v. *Salmon River Hydraulic etc. Co.*, 130 Cal. 345.[5]) Neither is the position of the defendants fortified, nor did they receive any immunity from their acts, by reason of the vote of the stockholders in January, 1893, purporting to ratify the acts of the directors during the previous year. The resolution of Novem-

---

[5] 80 Am. St. Rep. 132.

ber 9th, as we have seen, did not constitute an *act* of the "board" of directors, and, consequently, could not be affected by this resolution of the stockholders. Moreover, it was not in the power of a majority of the stockholders to vote to themselves or to one of their number the funds of the corporation, against the protest and objection of the minority. A majority of the body of stockholders has no power to vote away the funds of the corporation for an illegal purpose, or to make a gift of its funds, against the will of the minority. If the claim of Fairchild for his services was not a legal charge against the corporation, a majority of the stockholders could not authorize its payment, and their ratification of an unauthorized payment by the directors would add no strength to the act of the directors in making such payment. The stockholders had no authority to determine what should have been the salary of the manager. Both by the statute (Civ. Code, sec. 305), and by the by-law above quoted, this authority was conferred upon the board of directors, and could not be exercised by the stockholders. (See *Gashwiler* v. *Willis*, 33 Cal. 11.[6])

2. It is contended, however, by the appellants that the services rendered by Fairchild constituted a valid claim against the corporation, which could have been enforced by him, and that they were therefore justified in paying this claim. This proposition is rested upon their contention that his services as manager were of great value to the corporation, and were of an extraordinary character, and not within the scope of his duties as a director or officer.

The by-laws herein provide that the compensation of all of the officers of the corporation shall be fixed and determined by the board of directors, and the court finds that the board of directors did not, prior to November 9, 1892, adopt any resolution fixing or determining the compensation for any services that might be rendered by Fairchild, and that there was no contract or agreement between them at any time, prior to November 9th, with reference to his salary, or to the compensation to be paid for his services, and "that he acted as such manager and vice-president without any contract respecting such salary."

The rule is well settled, that, in the absence of any provision, agreement, or resolution on the part of the corporation fixing

[6] 91 Am. Dec. 607.

a salary or compensation for its directors, who are also officers, they are not entitled to any compensation for services rendered by them as such officers or directors. (*Smith* v. *Putnam*, 61 N. H. 632; *Sawyer* v. *Pawners' Bank*, 6 Allen, 207; *Maux Ferry Gravel Co.* v. *Banegan*, 40 Ind. 361; *Ellis* v. *Ward*, 137 Ill. 509; *Kilpatrick* v. *Penrose Ferry Bridge Co.*, 49 Pa. St. 118;[7] *Kelsey* v. *Sargent*, 40 Hun, 150; *Metropolitan Elevated Ry. Co.* v. *Kneeland*, 120 N. Y. 134;[8] *Pew* v. *First Nat. Bank*, 130 Mass. 391; Pierce on Railroads, 31; *Wickersham* v. *Crittenden*, 93 Cal. 17.)

In *McCarthy* v. *Mount Tecarte L. & W. Co.*, 111 Cal. 337, this court said: "As the respondent was a stockholder and director of the corporation, he was not entitled to compensation for services rendered by him for it, *no matter under what claim or official position, unless there was some kind of a contract for such compensation.*" The interest of the directors in the subject-matter of the trust, and the advantages to be derived from their individual supervision of a corporation, is deemed to be a sufficient consideration for assuming the position, and authorizes the presumption that they undertook to perform its duties without the acceptance of compensation. Such presumption can be overcome only by an agreement or resolution on the part of the corporation to the contrary before the services are rendered. This is but the application of the general rule as to the compensation of trustees. A trustee cannot, by his own act, while executing the duties of his trust, or by the performance of the duties assumed by him therefor, create an obligation against his beneficiary. By accepting the trust he assumes to act for the benefit of his beneficiary, and to perform gratuitously all the services necessary therefor. If the particular duties of his office are not defined, whatever services he may voluntarily render will be presumed to have been within his contemplation when he entered upon the trust, and he has no right of recovery for any services required of him in the exercise of the trust which may be referable thereto, and for which no compensation has been fixed. This rule has been applied where one of a board of directors was appointed treasurer, and performed the duties of that office (*Holder* v. *Lafayette etc. R. R. Co.*, 71 Ill. 106[9]); where the president of a bank was appointed superintendent of the repairs of the bank build-

---

[7] 88 Am. Dec. 497.          [9] 22 Am. Rep. 89.

[8] 17 Am. St. Rep. 619.

ing (*Pew* v. *First Nat. Bank,* 130 Mass. 391); where the vice-president of a corporation was also appointed its general superintendent (*Besch* v. *Western Carriage M. Co.,* 36 Mo. App. 333); where the president of a corporation was appointed its manager (*Rose* v. *Eclipse Carbonating Co.,* 60 Mo. App. 28).

In the cases cited in the opinion of Mr. Justice McFarland, where the right to compensation for services was upheld, this right was based upon the ground that the services were outside of the functions of a director, and had been rendered either in some ministerial or executive capacity,—such as secretary or treasurer of the corporation, or as superintendent or manager of its works,—to which he had been appointed by the other members of the board, or had been rendered under a similiar appointment or authority in matters entirely distinct from the management of the corporate affairs, as in the case of an attorney at law or agent, whose functions were such as could be delegated by the board of directors to a person not a member of the corporation. In the Fitzgerald case the court bases its ruling upon the fact that "the character of all the services rendered by him placed them outside of official duties proper." A portion of the claim for these services, as stated by the court, was for the expense and trouble in procuring money for the company while acting as its treasurer. In its instructions to the jury, the circuit court had said that "if Fitzgerald acted as superintendent, treasurer, or general manager of said company, and transacted the usual business that devolves upon such officer, etc.," he would be entitled to recover. In commenting upon this instruction, the supreme court concedes that the reference therein to the "treasurer" was erroneous, but that the error was unimportant, saying, in its opinion, immediately following that portion which is quoted by Mr. Justice McFarland: "The reference to the treasurer as made in one clause of the charge, even though inaccurate, was not of sufficient moment to require a reversal of the judgment." In none of these cases does it appear that the services for which the director was held entitled to compensation were rendered by him *by virtue of his office,* or that they were rendered in exercise of the official duties which he had assumed by virtue of his position as director.

In the present case, Fairchild did not hold the position of manager by reason of any special appointment to that office by the board of directors. He was manager only by virtue of

his position as vice-president, and whatever service he performed as manager was by virtue of this position. The by-laws declare: "The vice-president *shall be* the manager of the corporation, and shall perform such duties as may be prescribed from time to time by the board of directors." His election as vice-president made him *ispo facto* manager, and his acceptance of the office carried with it an obligation on his part to perform all the duties required of the manager. It does not appear that any duties were imposed upon him or prescribed for him by the board of directors, after he was elected a director, other than those which existed by virtue of the by-laws, and the court finds that all of the services rendered by him prior to November 9, 1892, "were rendered within the functions of vice-president and manager of said corporation and director thereof." These findings of fact are fully sustained by the evidence, and upon these facts the court has no alternative than to hold that he was not entitled to any compensation or salary for any of the services rendered by him as vice-president or as manager during this period, and that the appellant should restore to the corporation the money that had been withdrawn for the payment of the services.

This liability does not depend upon any proof or finding of negligence or fraud on the part of the defendants, or upon the extent or value of Fairchild's services. The defendants may have acted in the utmost good faith in making the payment, and the corporation may have derived great benefit from his services, but, as the law forbids him from receiving any compensation therefor, they were not authorized to make the payment, and the legal obligation exists upon them to restore the money so withdrawn.

The rule invoked by the appellants, that the law implies an agreement for compensation when one receives valuable services from another, has no application in the case of services rendered to a corporation by one of its officers or directors. The mere fact that a director has rendered valuable services to the corporation does not create an implied promise on the part of the corporation to pay him therefor. The presumption, in such case, that the services were rendered gratuitously can be overcome only by showing an agreement for such compensation before the services were rendered, or that the services were distinct from those which pertain to the office; and the burden

of making this showing is upon the claimant. The absence of an agreement that he should not be compensated therefor is not enough. It must be affirmatively shown that an agreefor compensation was made before the services were rendered.

The finding of the court, that "no contract" respecting his salary was made before the 9th of November, includes an implied as well as an express contract, and its findings that the services rendered were within his functions as vice-president and manager, preclude any implied promise to pay therefor. There could be no implied *assumpsit* for services which the law presumes he had agreed to render gratuitously. There were no duties imposed upon him after he was elected director of the corporation, other than existed by virtue of the by-laws. Whatever services he rendered to the corporation were performed at his own suggestion, and without any direction from the board of directors, and it must be held that they were performed gratuitously, and without any expectation of compensation.

The judgment and order should be affirmed.

Temple, J., and Beatty, C. J., concurred in the dissenting opinion.

Rehearing denied.