[Sac. No. 884.  Department One.—February 24, 1902.]

## WILLIAM A. NEVILLS, Appellant, v. MOORE MINING COMPANY et al., Respondents.

## HENRY F. WILLIAMS, Respondent, v. WILLIAM A. NEVILLS, Appellant, and JOHN P. JONES et al., Respondents.

MINING PARTNERSHIP—SUPERINTENDENCE BY ONE PARTNER—COMPENSATION—PROOF OF EXPRESS CONTRACT.—A partner requested by his fellow-partners to superintend a mine worked by the partnership, in order to establish an express contract with them for compensation, must prove more than his own deductions or conclusions as to its existence, and must show that certain and definite language was used between the partners, expressing the terms of the contract, and a meeting of their minds as to its terms, and mutual consent thereto communicated by each party to the other.

CXXXV. Cal.—36

ID.—GENERAL RULE AS TO COMPENSATION.—As a general rule, a partner is not entitled to any compensation for his services, in the absence of an express contract or of circumstances from which the law will imply an agreement for compensation.

ID.—IMPLIED CONTRACT—QUESTION OF EVIDENCE—SUPPORT OF FINDINGS—INFERENCES OF FACT—REVIEW UPON APPEAL.—The existence of an implied contract for compensation, from the facts and circumstances of the case, is a question of evidence for the trial court to determine; and its inferences of fact which support its finding against an implied contract will not be disturbed upon appeal, though the trial court might with justice and propriety have found the other way.

ID.—ABSENCE OF CLAIM.—The circumstance that the superintending partner made no claim for compensation in his accounts rendered to the partnership prior to the commencement of the action, or in his original complaint for an accounting, or until shortly before the trial, is relevant evidence against him, and testimony on that point was properly admitted.

APPEAL from a judgment of the Superior Court of Calaveras County.   C. V. Gottschalk, Judge.

The facts are stated in the opinion.

E. L. Campbell, John F. Davis, and F. J. Solinsky, for Appellant.

Page, McCutchen & Eells, and Page, McCutchen, Harding & Knight, for William A. Flemming, Respondent.

CHIPMAN, C.—In January, 1885, appellant, William A. Nevills, and defendants John P. Jones, John Flemming, and D. C. Nichols, were owners of all the capital stock of a corporation called the Amador Tunnel, Mill, and Mining Company, whose property was situated in Amador County. Nevills was appointed superintendent of the company at a salary of $250 per month, and immediately began work on the mine. About three months later, in April or May, 1885, these same parties formed a mining copartnership for the purpose of working the so-called Moore mining property, which they purchased in 1884, and on which Nevills had a bond.   At the request of his copartners, Nevills became superintendent also of the Moore mine, and he managed the active operations of both properties until about November, 1888.   September 3, 1889, Nevills commenced an action in the superior court of

said county against his copartners, alleging that he had made certain advances to the copartnership in excess of the amount due from him, and setting forth the amounts claimed to be due from each of his copartners.   In this action William Flemming was made a defendant, as successor in interest of John Flemming, and one W. D. Garland was also made a defendant, as claiming some interest through defendant Nichols.   An accounting was asked, and a dissolution of the partnership and a sale of the property to enforce the lien for the amounts due plaintiff.

On November 21, 1895, Henry F. Williams commenced an action for partition of the Moore mining property, claiming for himself an interest therein.   The two causes were consolidated and transferred to Calaveras County for trial, and were there tried in November, 1898.   At the trial Nevills claimed compensation as superintendent of the Moore mine for thirty-one months' service, and for care subsequently bestowed on the property, and this is the issue now here for review.   The court found that there was neither an express nor an implied agreement entered into by his copartners to pay Nevills anything for his services, and it was so adjudged in the interlocutory decree, from which plaintiff Nevills appeals on bill of exceptions.

1. Whether there was an express agreement to pay appellant a salary for superintending the Moore mine rests mainly upon his testimony.   Upon this testimony the court found that no express contract was proved.

"An express contract is one the terms of which are stated in words."   (Civ. Code, sec. 1620.)   Such a contract need not be in writing, but whether oral or written there must be certainty and definiteness as to the language or words used in expressing the terms of the contract and in showing a meeting of the minds of the parties as to the terms.   Consent is one of the essentials to the existence of any contract (Civ. Code, sec. 1550), and must be "communicated by each party to the other."   (Civ. Code, sec. 1565.)   Before the court can say that an express contract is proven, there must be something more than the deductions or conclusions of the witness from the words used.   When the witness said, "I had an agreement with my partners with reference to compensation," "They understood I was to get a salary," "I was to get a fair

compensation,'' and like expressions, the witness was but stating his conclusion. In the absence of any words or language used by any one of the partners in the presence and hearing of the others, and in the absence of any words or language used by the witness to his partners stating that he would not undertake the additional responsibility without additional pay, to which they assented by some language or words or conduct of definite import, we cannot say the court erred in finding that there was no express contract.

2. Was there an implied agreement to pay Nevills a salary? The general rule is, that a partner is not entitled to any compensation for services rendered by him to the copartnership. (*Osment* v. *McElrath,* 68 Cal. 466;[1] Civ. Code, sec. 2413.) It has frequently been decided that all parties to a copartnership may not only by express contract agree that a partner may receive compensation for such service, but that the law will imply an agreement to compensate him under certain circumstances.

The question is one of evidence, and it was for the trial court to determine whether, from the facts and circumstances, a contract was proven. It appeared that appellant was requested by his partners to take charge of the work, and, as already stated, he did so, and rendered satisfactory and valuable services; his partners in the Moore mine were co-stockholders with him in the corporation property, and they made him superintendent of that mine, at a salary of $250 per month; he resided at the corporation's mine, but visited the Moore mine almost daily. It appeared also that appellant made reports in writing monthly, showing expenses and receipts for both mines, and charged up his salary in each report concerning the corporation property, but he made no charge or memorandum of any charge for services in the Moore mine, for the reason, as he testified, that there were no funds to pay it; that he made any claim or had any understanding for compensation was not known to the secretary and auditor of the companies, and this officer received a salary from the corporation, but none from the company. In February, 1888, the former secretary made out an account which he testified was the basis of Nevills's action against his partners. This account purported to give the total expenses, the payments

---

[1] 58 Am. Rep. 17.

made by each partner, and the balance due from each to the other to equalize their several accounts. In his complaint, filed in 1889, Nevills said nothing about any claim for services, nor did he make any claim therefor until shortly before the trial of the consolidated causes in 1898. At the trial two stipulations were entered into covering most of the facts involved. On the question now here it was at first stipulated that, on account of certain enumerated services, Nevills "is entitled to compensation therefor, and such compensation shall be such as the court shall fix and determine." This stipulation was entered into November 28, 1898, and was filed November 30, 1898. On November 28th another stipulation was entered into, which was filed on November 28th; by it the parties stipulated that the question of Nevills's compensation should be heard without amending the pleadings, "and said Nevills's complaint shall be deemed to have demanded compensation, and amended accordingly, and that no advantage will be taken by any one whatever of the fact that no claim for such compensation has up to the present time been specifically made by any allegations in the pleading in either of said actions; but such claim for compensation shall be deemed to have been made by the pleadings, the fullest and fairest opportunity being accorded Mr. Nevills, by this stipulation in this matter, of presenting his claim for compensation to the court and of having the same heard, passed upon, and determined, and the stipulation heretofore entered into with regard to the issues in these cases is hereby amended in the foregoing particulars to read as above with regard to such compensation."

We do not think it can fairly be claimed that the stipulations entered into were intended to admit a liability to Nevills for compensation. The first one was so intended, but the second one shows that the parties finally agreed to submit that issue to the court and to agree that the pleadings need not be amended as to that issue. The stipulation certainly did not admit that in his complaint, as originally filed, Nevills alleged a claim for compensation. It may be that, in view of all the facts and circumstances, of which the principal ones have been stated, the trial court might with justice and propriety have decided favorably to appellant. But we do not see how this court can interfere with the conclusion reached.

The rule governing this court is concisely stated as follows: "The inference of one fact from others must be made by the trial court, and, if the facts it has found are such as might authorize different inferences therefrom, it will be assumed that the inference made by the trial court was one that will uphold rather than defeat the judgment." (*Gould* v. *Eaton*, ·111 Cal. 639;[1] citing *Breeze* v. *Brooks*, 97 Cal. 72. See, also, *Cauhape* v. *Security Savings Bank*, 118 Cal. 82.)

3. The circumstance that Nevills made no claim for compensation until shortly before the trial was relevant evidence and was entitled to some weight, and the testimony of the witness Halsey on that point was properly admitted.

It is advised that the judgment be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

Garoutte, J., Van Dyke, J., McFarland, J.

Hearing in Bank denied.