EMILIO RIVERA MALDONADO, Plaintiff and Appellant, *v.* CENTRAL PASTO VIEJO INC., Defendant and Appellee.

No. 5651. Argued May 19, 1932.—Decided June 24, 1932.

*F. Gallardo Díaz* for appellant. *Walter L. Newsom, Jr., J. Henri Brown,* and *R. Castro Fernández* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

This is an action for damages brought by Emilio Rivera Maldonado against Central Pasto Viejo, Inc. Plaintiff al-

leges, among other things, that defendant owns a railroad in the Municipality of Humacao and that the track of said railroad crosses the insular road between Humacao and Naguabo at a place known as Entrance to Pasto Viejo.

Plaintiff further alleges that on February 22, 1927, while entering upon said railroad crossing, he was run over by engine No. 4, owned by the defendant, and that as a result thereof he suffered several injuries and had to be confined in bed for some time; and that his automobile was rendered absolutely useless.

After a judgment was rendered in favor of the defendant, the plaintiff took an appeal and assigned the following errors:

1. The court should have rendered a judgment on the pleadings in favor of the plaintiff.

2. The court erred because the judgment rendered is contrary to the law and the facts.

In the case at bar the complaint was verified. According to the Code of Civil Procedure when the complaint is verified, the denial of each allegation controverted must be specific, and be made positively, or according to the information and belief of the defendant. Plaintiff gave timely notice to defendant that he intended to move for a judgment on the pleadings at the commencement of the trial. Defendant asked and was granted permission to file an amended answer. Immediately after the filing of the amended answer, the plaintiff moved for a judgment on the pleadings. The defendant objected and the court again granted leave to amend its answer over the objection of the plaintiff, who took an exception to that ruling. Upon the filing of the second amended answer, the plaintiff objected to its admission because the defendant had already amended its answer several times. The court admitted the answer, and the plaintiff took an exception urging that the new amended answer was defective and that it embodied what is known in law as a "negative pregnant." Plaintiff further main-

tained that the averments of the complaint had been admitted, as the oath to the last amended answer was defective. Plaintiff then stated that the last amended answer admitted the facts set forth in the complaint, that the verification was defective, and that he was still willing to give the defendant another opportunity to correct such defects. Defendant refused that opportunity, and the plaintiff, without his having moved for a judgment on the pleading when the last answer was filed, proceeded to introduce his evidence.

We need not discuss the defects in the verification or the admissions in the answer. We grant that both the answer and the verification are defective, but the plaintiff failed to move for a judgment on the pleadings and is now precluded from raising this question on appeal.

In the case of *Sprigg* v. *Barber*, 55 Pac. 419, the Supreme Court of California, expressed itself as follows:

" . . . The answer, taken as a whole, we think made the question of payment an issuable fact, and that the court properly found upon it. Besides, the parties seem to have proceeded to trial upon the answer, without objection to its sufficiency to raise the issue, and evidence was received as to the facts set up in the answer, and the issue was passed upon. In such case objection will not be heard in this court for the first time that the finding is not within the issues."

As we have said, the plaintiff proceeded to introduce his evidence without insisting on his original motion for a judgment on the pleadings and without reproducing his motion when the last amended answer was filed.

In the case of *Illinois Trust and Savings Bank* v. *Pacific Ry. Co.*, 115 Cal. 285, 47 Pac. 60, the Supreme Court of California said:

" . . . It is well settled that where the parties have proceeded to trial upon a pleading, without objection to its sufficiency to raise a particular issue, and evidence has been received as to the fact, and the issue found upon, the party whose duty it was to object will not be heard in this court to say that the finding is not within the issues. (*King* v. *Davis*, 34 Cal. 100; *Horton* v. *Dominguez*, 68 Cal. 642; *Moore* v. *Campbell*, 72 Cal. 251; *Sukeforth* v. *Lord*, 87 Cal. 399.)

From Bancroft's "Code Pleading," page 1012, section 720, we transcribe the following:

"So a party who, after his motion for judgment on the pleadings is denied, goes to trial, attempting to establish his right by proof, waives the motion."

See also the cases of *Guzmán* v. *Ortiz*, 39 P. R. R. 170, and *Paulson* v. *Bergman*, 62 Colo. 93, 160 Pac. 189.

The plaintiff testified, among other things, that when he arrived at the grade crossing on the road leading from Humacao to Naguabo, he stopped his vehicle near the track, and as he heard and saw nothing, he started to cross the track, and then the engine appeared, struck the vehicle on its right side, and pushed it into the road ditch. This testimony was corroborated by the witness, Pedro Vasallo, who accompanied Emilio Rivera when the accident occurred. Said witness stated that when they were going through the Pasto Viejo crossing, a grade crossing located on the road which lies between Humacao and its beach, an engine appeared going at great speed and ran over the Ford car, pushing it into the right-hand ditch of the road; that he and Emilio Rivera fell out of the car, and the latter suffered some injuries in the face, hands, and knees. The automobile, he says, was rendered useless. Both witnesses stated that the engine did not sound a whistle nor ring a bell.

The negligence of the defendant corporation appears from its own evidence. Its witnesses are in agreement that near the crossing there is a slope and that when the train is heavily loaded the engine must be speeded up to climb it. When the load is light, the train can go slowly; but when it is heavy, it is necessary to go fast. These witnesses, defendant's employees, stated that the engine was going fast, and the fireman Sotero Pizarro testified that "the engine was going at a fast pace (*a un paso bastante agigantado*)." The engineer Rafael García stated that the engine lost its headlights and that when the accident occurred it only had

two small gas lanterns. The witness Julio Luzunaris testified that he is a mechanic, and works at Central Pasto Viejo; that on February 22, 1927, he was conducting a train loaded with sugar cane, going towards the factory just behind engine No. 4; that he saw said engine as it went over the grade crossing where the accident took place; that at night no watchman is kept there to give signals to passing vehicles, and that on the night of the accident there was no watchman there; that sometimes the witness himself has been exposed to danger in that same place because there is a curve on the road, and the place is very dangerous; that the witness complained to his principals about that peril, in fear that something might happen; that he had reported the matter to the traffic manager because the witness worked on the night shift; that in spite of that nobody was there to make signals and nobody was put there afterwards; that due to the slopes lying before and beyond the road it is necessary to speed up the engine to climb from the plains, and that the engine goes fastest when it crosses the highway.

The witnesses for the defendant also stated that on approaching the crossing, the whistle was sounded and the bell rung. The engineer said that when the whistle is sounded some steam escapes, although in small amount, and that when the engine is going up an incline no steam can be discharged.

The trial court in its findings of fact says:

"That at that place the defendant keeps no gates, chains, or similar devices for the protection of travelers, and that on the night in question there were no red lights, nor a watchman in charge of warning travelers of the approach of said train."

The evidence for the defendant is in itself sufficient to establish its negligence. Defendant, in spite of the complaint of one of its employees, failed to provide gates or chains, or to maintain some sort of protection for the travelers; it did not even have a watchman to signal the approach

of the train at night.  These safeguards, which should always be adopted for the protection of the public, are still more necessary in a case like the one at bar in which the defendant's witnesses have stated that when the train is heavily loaded the engine must be speeded up in order to climb the grade, and that it attains its greatest speed when going upon the crossing.  Thus the defendant, besides not taking the precautions mentioned, permitted the train to be heavily loaded knowing that the engine had to be speeded in order to climb the slope and pass the grade crossing.

The trial court acknowledged the defendant's negligence, but it rendered judgment against the plaintiff based on the fact that the latter had been guilty of contributory negligence.  We transcribe below the grounds on which the trial court rested its decision:

"The evidence on this point is wholly conflicting.  The witnesses for the defendant maintain that the train sounded its whistle and rang the bell when nearing the crossing, a fact which is denied by the plaintiff and by a witness who accompanied him in the automobile.  Plaintiff maintains that on approaching the place where the accident occurred he stopped his car, looked, and listened, and saw nothing that could warn him of the approach of the train.

"As we said before, the track runs almost parallel to the road for a distance of some yards before reaching the grade crossing, and the noise made by a train carrying thirty wagons, together with the fact that the accident took place in the early morning, when silence is complete and absolute, and even more so in the country, where there is no traffic, make us doubt very much whether the plaintiff, if he really stopped his car, did look and try to listen and could not hear the approaching train, already so close to him, even assuming that the train gave no signals with its whistle or bell.  Plaintiff's witness, Cándido Báez, stated that he saw an automobile coming, and when it crossed the track it was caught by the engine, and he did not say that the automobile was at a standstill, but that it was moving towards the grade crossing at that moment.

"If we accept the theory of the defendant that its employees on approaching the crossing sounded a whistle and rang a bell, it is clear and evident that the plaintiff was negligent in trying to cross,

supposing he knew that the train was approaching; if on the contrary we assume that the plaintiff stopped his automobile, looked, and tried to listen, it seems to us inexplicable how during the silence of the night, given the situation of the track in connection with the road and the nearness of the train, that he and his companion took no account, from the noise of the locomotive, that the train was near and that it was a lack of prudence on his part to try to cross the track in these moments, inasmuch as a careful person, as the law and the jurisprudence require, would have waited to satisfy himself in a certain and definite manner that the train was about to go over the crossing which he was trying to use at the same moment.''

''Besides, it has been shown by the evidence that the driver of the automobile in question was thoroughly familiar with the road from Humacao to the Playa, and, further, that he knew that there were no gates or chains for the protection of travelers or a watchman to signal the approach of the train.''

One of the witnesses for the defendant corporation stated that sometimes a train is near and it can not be heard because of the wind, and that on quiet nights it can be heard. According to the evidence for the defendant, the engine was speeded up while crossing the road, and it was running, in the words of one of defendant's witnesses, ''at a fast pace.'' The negligence attributed to the plaintiff by the trial court is based on the situation of the track, the stillness of the night, and the noise of a train carrying thirty wagons. The lower court greatly doubts whether the plaintiff, if he really stopped his automobile, looked, and tried to listen, did not hear the approaching train, already so near him, even assuming that the train gave no warning signals with whistle or bell. This doubt is settled by the court a quo against the plaintiff without adjusting the conflict in the evidence as to whether the whistle was sounded or the bell was rung, undoubtedly because it thought that this was unnecessary, inasmuch as said court states that it cannot understand how the accident could have occurred without the existence of contributory negligence on the part of the plaintiff.

However, it having been proved that the engine was running "at a fast pace" while going up the slope, it is possible that the sounding of the whistle, the ringing of the bell, and the arrival of the train at the crossing may have happened in succession, so closely upon one another, that the plaintiff could not have avoided the accident even after taking all precautions. It seems to us that the argument is being forced in order to arrive at conclusions which might be wrong. We think that the negligence charged against the plaintiff in this case as being the proximate cause of the accident has not been proved.

The witnesses for the plaintiff testified as to the damages suffered. Pedro Vasallo stated that the automobile was worth $600 and that it was rendered useless, its value having decreased to not more than $50. Plaintiff testified that his automobile was a new car which he had refused to sell for $600. He further stated that he received injuries in the face, hands, and knees; that he received a severe blow in the left knee; that he was treated by Dr. Peña and that he was confined in bed for ten or twelve days. He added that his automobile was a public-service vehicle; that he used to earn from four to five dollars a day, and that after he lost his automobile he had to work as an employee, and failed to earn as much money as he used to when he had his own vehicle.

Dr. Peña testified that he had attended the plaintiff who exhibited injuries in the knee, the face, and in the palms of the hands; that medical treatment was rendered continuously from February 23 until March 4, 1927, and that afterwards he attended the patient in his home; that the plaintiff suffered from an inflammation of such a character that he was forced to stay in bed, with a loss of synovial fluid, and with a big edema on his right knee.

Considering the injuries received by the plaintiff and the damages caused to the automobile, estimated at $500, we feel that the judgment appealed from must be reversed and an-

other rendered instead adjudging the defendant corporation to pay to the plaintiff the sum of $700, with costs.

Mr. Justice Wolf, dissenting.

Section 1803 of the Civil Code is the principal source of our jurisprudence with regard to negligence. *Orta* v. *P. R. Ry. Light & Power Co.,* 36 P.R.R. 668; *Carbou* v. *Mir,* 36 P.R.R. 728. In our development of the quasi-contractual obligation defined in that section we have accepted the application of the American doctrine of the contributory negligence on the part of a plaintiff which if proved would defeat the action. This has been recently outlined by this Court in the case of *Miranda* v. *P. R. Ry. Light & Power Co.,* 42 P.R.R. 694. Of course when one is applying the doctrine of last clear chance both negligence and contributory negligence must pre-exist. The opinion of the District Court of Humacao convinces me that it was following the jurisprudence of this Court that applies the doctrine of contributory negligence.

The court found that the defendant had been negligent in accordance with the case of *Domínguez* v. *P. R. Ry. Light & Power Co.,* 19 P.R.R. 1034, in not keeping either gates, chains, or a watchman at the railroad crossing. Then the court proceeded to examine the conduct of the plaintiff. The judge assumed what we have considered as a fixed rule, that as the plaintiff knew the road and that a train could emerge at any time, he was bound to stop, look, and listen. The plaintiff does not question his obligation to do so; in fact, he insisted that he did stop, look, and listen, but heard and saw nothing. With this duty in view, the District Court of Humacao came to the conclusion that the plaintiff had been guilty of contributory negligence. The judge did not say so in exactly these words and indeed did not mention the words "contributory negligence" at all, but he did what was the strongest evidence of such a finding: he rendered judgment for the defendant despite the fact that he had come to the conclusion

that the defendant had been negligent. Such a judgment necessarily involved the fact that the plaintiff had been guilty of contributory negligence.

Even though a court is bound to make findings or write an opinion to cover the facts, if in the opinion or findings of fact the court fails to make a particular statement that perhaps should have been made, anything in the record, especially in the evidence, that would justify the judgment of the court must be applied in favor of the judgment. *Breeze* v. *Brooks,* 97 Cal. 72, 31 Pac. 742, 22 L.R.A. 256; *Perkins* v. *West Coast Lumber Co.,* 129 Cal. 427; *Paine* v. *San Bernardino etc. Co.,* 143 Cal. 654, 77 Pac. 659; *Nevills* v. *Moore Min. Co.,* 135 Cal. 561, 67 Pac. 1054; 4 C. J. 778 *et seq.,* note 83. Every intendment is in favor of the judgment of a court of record until the contrary clearly appears. *Stoddard* v. *Fox,* 15 Idaho 704, 99 Pac. 122; 4 C. J. 76, sec. 2739 *et seq.; Municipality of Caguas* v. *West India Oil Co.,* decided June 24, 1932, *ante,* p. 669. The court, however, made, in my opinion, every specific finding that was necessary. It is true that it did so in alternative form, but nevertheless it was a complete finding. If a judge is doubtful as to a particular fact, namely, whether a plaintiff did or did not stop, but whether he stopped or not he was guilty of contributory negligence, no special determination of the court need be required. A court on weighing the evidence has certain rules to guide it. If a plaintiff fails to make out a case, judgment goes to the defendant. If a plaintiff makes out a prima facie case and the defendant introduces evidence which puts the proof of the plaintiff in conflict, the court is bound to resolve that conflict, still throwing the burden of proof on the plaintiff. When a defendant relies on the doctrine of contributory negligence, the burden of proving such contributory negligence falls upon him, as we have laid down the law. In this case it is conceded that the plaintiff was under a duty to

stop, look, and listen. The court said, or in effect said, that either the plaintiff did not stop, look, and listen, or that if he had stopped, looked, and listened, he was bound to have heard or seen the approaching train. The court said:

"If we accept the theory of the defendant that its employees on approaching the crossing sounded a whistle and rang a bell, it is clear and evident that the plaintiff was negligent in trying to cross, supposing he knew that the train was approaching; if on the contrary we assume that the plaintiff stopped his automobile, looked, and tried to listen, it seems to us inexplicable how during the silence of the night, given the situation of the track in connection with the road and the nearness of the train, that he and his companion took no account, from the noise of the locomotive, that the train was near and that it was a lack of prudence on his part to try to cross the track in these moments, inasmuch as a careful person, as the law and the jurisprudence require, would have waited to satisfy himself in a certain and definite manner that the train was about to go over the crossing which he was trying to use at the same moment."

The court necessarily meant that if the plaintiff did stop and did not see or hear the train, it was because he was not really using his faculties and hence was negligent. The alternative adopted by the court was a form of syllogism known in the books of logic as a dilemma. When a reasoner relies on a dilemma to reach a fixed conclusion of negligence he does not have to specify which horn of the dilemma he grasps, as the conclusion follows in either event. Other courts have arrived at similar conclusions by the same processes of reasoning.

In *Almodóvar* v. *Acosta*, 43 P.R.R. 191, the District Court of San Juan made use of an alternative reasoning in favor of a plaintiff, and we held that it was unnecessary for the court to make a more specific finding. If this reasoning could be applied in favor of a plaintiff, similarly it must be applied in favor of a defendant, especially when in either case the question involved was one of negligence in the particular party concerned.

From my own reading of the evidence I should arrive at the conclusion that the plaintiff did not stop, because it seems to me impossible that if he had stopped the accident would have occurred.