Filed 3/20/15  Briskin v. Oceanside Marina Towers Assn. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JULES BRISKIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>OCEANSIDE MARINA TOWERS ASSOCIATION,<br><br>    Defendant and Respondent. | D065043<br><br><br>(Super. Ct. No. 37-2010-00061659-CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed in part, reversed in part, and remanded.

Rupp Johnston & Lloyd and Andrew F. Lloyd for Plaintiff and Appellant.

Epsten Grinnell & Howell, Anne L. Rauch and Rian W. Jones for Defendant and Respondent.

INTRODUCTION

Jules Briskin appeals from summary judgment granted in favor of Oceanside Marina Towers Association (Association).  He raises 17 discrete appellate issues

collectively contending: (1) there are triable issues of material fact as to nearly all of the causes of action in his operative first amended complaint (complaint); and (2) the trial court erred in determining certain documents were protected by the attorney-client privilege. We agree there are triable issues of material facts as to Briskin's breach of implied contract and quantum meruit causes of action. We reverse the judgment as to these causes of action and remand the matter to the trial court for further proceedings as to them. We affirm the judgment in all other respects.

BACKGROUND

The Association is a mutual benefit nonprofit corporation composed of owners of condominium units in the Oceanside Marina Towers development. Until May 2009 the Association leased the land underneath the development from the City of Oceanside (City).

In 2002, Briskin purchased his first unit in the development and was appointed to the Association's Board of Directors (Board). In March or April 2003 in his capacity as a Board member, he began negotiating with the City for the Association to purchase the land underneath the development (land sale). The negotiations spanned several years, during which Briskin acquired four more units in the development believing they would increase in value once the land sale was completed.

In or about 2006, the year Briskin acquired the last three of his five units, he indicated to the Board he expected and he began repeatedly requesting compensation for his work on the land sale if it were successful. The Board repeatedly responded it was not going to compensate him.

2

Nonetheless, Briskin contends he spoke to individual Board members about receiving compensation and they all agreed he should be compensated because his services were beyond the typical voluntary services expected of Board members. In addition, they committed to supporting his efforts to obtain compensation, and they assured him he did not need their commitment in writing. He knew, however, no individual Board member had the authority to enter into a compensation agreement with him and the Board was resistant to adopting a formal resolution to compensate him.

In March 2007 in response to Briskin's continued demands for compensation and following the advice of the Association's then general counsel, the Board formed an advisory committee to discuss the possibility of compensating Briskin for his work on the land sale and to recommend a reasonable compensation amount. Based on remarks from individual Board members outside of Board meetings, Briskin believed the formation of the committee meant the Association intended to compensate him, contingent upon the successful completion of the land sale. One Board member also thought Briskin subjectively believed the formation of the committee meant the Association intended to compensate him, but the Board member did not support compensating Briskin and personally viewed the formation of the committee as a means of "buying some time" until escrow closed on the land sale.

The committee ultimately recommended the Association compensate Briskin $70,000. Although the Association disputes it intended the committee's recommendation to be an offer of compensation, Briskin interpreted it as such and countered with a memo arguing for a higher amount. The Board never formally acted on the committee's

3

recommendation or resolved to compensate Briskin. The parties dispute whether individual Board members, through a series of side conversations with Briskin and one another, informally agreed to the recommendation or to compensate him.

In July 2008 the City agreed to sell the property to the Association for $5 million. In October 2008 Briskin filed a bankruptcy petition. He resigned from the Board the same month, but he continued his land sale-related duties until November 2008, when the Board relieved him of his duties. The Association closed escrow and obtained title to the property in May 2009. The Board subsequently resolved not to compensate Briskin for his work on the land sale.

Briskin sued the Association, asserting causes of action for: breach of express contract, breach of implied contract, quantum meruit, unjust enrichment, breach of fiduciary duty, negligence, promissory fraud, fraudulent concealment, constructive fraud, and negligent misrepresentation.

In September 2009 Briskin filed an amended schedule of personal property in his bankruptcy case, which included his claim for compensation against the Association as an asset. He described the claim as follows: "[Briskin] claims agreement whereby [Association] would compe[ns]ate him for negotiating with [City] to purchase land under condos. Payment contingent upon approval which was obtained in May 2009. [Association] disputes terms of agreement, claims [Briskin] is not owed, and [Briskin's] debt to [Association for unpaid homeowners' association fees offsets] claim for compensation. *No written agreement*." (Italics added.) Briskin also admitted during his depositions in this case there was no written or oral agreement between the parties.

4

The Association filed a motion for summary judgment or, alternatively, for summary adjudication of each cause of action in the complaint. The trial court granted the motion, finding there were no triable issues of material fact as to any of Briskin's causes of action.[1]

DISCUSSION

"A trial court should grant a defendant's motion for summary judgment if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. On appeal, we review the matter independently, resolving in the plaintiff's favor any doubts regarding the propriety of summary judgment."[2] (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415.)

I

*Express Contract Cause of Action*

"An express contract is one, the terms of which are stated in words." (Civ. Code, § 1620; *Nevills v. Moore Mining Co.* (1902) 135 Cal. 561, 563 (*Nevills*).) "Such a contract need not be in writing, but whether oral or written there must be certainty and definiteness as to the language or words used in expressing the terms of the contract and

---

[1]     Briskin's opening brief raises no issues regarding his unjust enrichment cause of action. He has, therefore, waived any challenges to the judgment as to this cause of action. (*Brown v. Professional Community Management, Inc.* (2005) 127 Cal.App.4th 532, 536, fn. 2.)

[2]     Because our review is independent, we need not address Briskin's contention the trial court improperly decided factual issues when it granted the Association's motion.

in showing a meeting of the minds of the parties as to the terms." (*Nevills*, *supra*, at p. 563.)

Here, Briskin admitted in his bankruptcy case and testified in a deposition in this case that there was no written agreement between the parties. He also admitted in a deposition in this case there was no oral agreement between the parties. Moreover, he has not identified nor is there any evidence in the record of any oral statements certainly and definitely expressing contract terms or showing mutual assent. Rather, to establish the existence of an express contract, Briskin relies on his conversations with individual Board members, the Association's decision to form a committee to consider compensating him, the committee's recommendation that the Association compensate him $70,000, the Association's failure to respond to correspondence from him characterizing the parties' course of dealing in contract terms, and the Association's acceptance of the benefits of his work.

However, as the California Supreme Court explained in an analogous context, "Before the court can say that an express contract is proven, there must be something more than the deductions or conclusions of the witness from the words used. When the witness said, 'I had an agreement with my partners with reference to compensation,' 'They understood I was to get a salary,' 'I was to get a fair compensation,' and like expressions, the witness was but stating his conclusion. In the absence of any words of language used by any one of the partners in the presence and hearing of the others, and in the absence of any words or language used by the witness to his partners stating that he would not undertake the additional responsibility without additional pay, to which they assented by

6

some language or words or conduct of definite import, we cannot say the court erred in finding that there was no express contract." (*Nevills*, *supra*, 135 Cal. at pp. 563-564.) Accordingly, Briskin has not established there is a triable issue of material fact as to the existence of an express agreement to compensate him.

II

*Implied Contract Cause of Action*

An implied contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." (*Silva v. Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773; *California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1134; Civ. Code, § 1621.) "[B]efore a contract may be implied, it must be determined, as a question of fact, whether the parties acted in such a manner as to provide the necessary foundation for it, and evidence may be introduced to rebut the inferences and show that there is another explanation for the conduct." (*Silva v. Providence Hospital of Oakland*, *supra*, at p. 774.)

Generally, a corporate director is not entitled to compensation for ordinary services absent an advance agreement. (*Wickersham v. Crittenden* (1892) 93 Cal. 17, 32; *Savage v. Lorraine Corp.* (9th Cir. Cal. 1954) 217 F.2d 378, 380 ["The normal inference is that a director who acts in any capacity for a corporation is acting in his own interest and whether or not he performs services as an officer or agent he is not expecting further compensation therefor. Consequently, the ordinary rule is that no salary is due unless

7

there is a resolution of the board of directors expressly fixing the amount thereof before the services are rendered."].)

As Briskin points out, however, there is a well-recognized exception to the general rule. Specifically, a director who performs extraordinary services as an officer or an agent "without any lawful action of the board of directors fixing his compensation, but under circumstances negativing an intent that they were to be gratuitous, may recover the reasonable value of those services." (*Caminetti v. Prudence Mut. Life Ins. Asso.* (1944) 62 Cal.App.2d 945, 951, citing *Bassett v. Fairchild* (1901) 132 Cal. 637, 643; *King v. Grass Valley Gold Mines Co.* (1928) 205 Cal. 698, 699; 2 Cox & Hazen, Treatise on the Law of Corporations (3d ed. 2010) § 11.1 ["By the great weight of authority, the presumption against an implied contract of compensation for the directors and officers of a corporation does not apply to unusual or extraordinary services—that is, services that are not properly incidental to their office and are rendered outside of their regular duties. If directors or other officers perform such services at the request of the board of directors with the understanding that they are to be paid for, the law will, in the absence of any special agreement, imply a promise to pay what they are reasonably worth."].) Nevertheless, a director cannot recover compensation for extraordinary services on an implied contract or quantum meruit theory where the circumstances show no compensation was intended or expected. (2 Cox & Hazen, Treatise on the Law of Corporations (3d ed. 2010) § 11.1, fn. 15.)

To show his services were extraordinary and not intended to be gratuitous, Briskin again relies on his conversations with individual Board members, the Association's

8

decision to form a committee to consider compensating him, the committee's recommendation the Association compensate him $70,000, the Association's failure to respond to correspondence from him characterizing the parties' course of dealing in contract terms, the amount of time and effort he expended on the land sale, and his continued work on the land sale after he was no longer a Board member.

Although the Association disputes much of Briskin's evidence, or at least its import, the Association attempts to completely negate the evidence by relying on an Association bylaw providing: "Directors and members of committees may receive such compensation, if any, for their services, and such reimbursement for expenses, as may be fixed or determined by resolution of the Board." In the Association's view, the absence of a Board resolution complying with this provision conclusively establishes there was no mutual intent to compensate Briskin.

The Association is mistaken on this point. The bylaw provision is merely evidence unfavorable to Briskin's position. (*Barstow v. City R. Co.* (1871) 42 Cal. 465, 469). It is not dispositive. (See, e.g., *Pease, Kolberg & Co. v. Bates* (1927) 85 Cal.App. 786, 788). Accordingly, the Association has not shown the absence of a triable issue of material fact as to Briskin's implied contract cause of action.[3]

---

[3] The trial court also based the judgment as to the implied contract cause of action on its determination "Briskin was not capable of contracting per Corporations [Code section] 7233 which prohibits a director from voting in connection with his or her own compensation." However, the Association does not contend and there is no evidence in the record showing Briskin ever voted on his own compensation.

9

III

*Quantum Meruit Cause of Action*

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made' [citations]." (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458.) For the same reasons the Association has not shown the absence of a triable issue of material fact as to Briskin's implied contract cause of action (see part II, *ante*), the Association has not shown the absence of a triable issue of material fact as to Briskin's quantum meruit cause of action.

IV

*Negligence and Negligent Misrepresentation Causes of Action*

Briskin's negligence cause of action alleges the Association had a duty not to subject him to injury, hardship, or emotional distress; the Association breached the duty by undertaking negligent acts it knew would affect Briskin's rights, interest, and person; and as a proximate result of the Association's negligence, Briskin suffered serious emotional distress and other damages. In his opposition to summary judgment below, Briskin effectively limited the factual basis of this cause of action to the Association's alleged act of promising him compensation while concealing a contrary intent. As

10

limited, Briskin's negligence cause of action is essentially indistinguishable from his negligent misrepresentation cause of action.

A negligent misrepresentation cause of action requires an affirmative misrepresentation of a past or existing material fact. (Civ. Code, §§ 1572, subd. (2), 1710, subd. (2); *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 304.) As discussed in part I and II, *ante*, there is no evidence the Association affirmatively represented it would compensate Briskin. Any such representation was implied. A negligent misrepresentation claim cannot be based on an implied representation. (*Lopez v. Nissan North America, Inc.* (2011) 201 Cal.App.4th 572, 596; *Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 297-298; *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291, fn. 6; *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306; *Huber, Hunt & Nichols, Inc. v. Moore*, *supra*, 67 Cal.App.3d at p. 304.) Consequently, Briskin has not established there is a triable issue of material fact as to his negligence and negligent misrepresentation causes of action.[4]

For the same reason, he also has not established there is a triable issue of material fact as to his promissory fraud cause of action. (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 376 [fraud cause of

---

4    The trial court also based the judgment as to Briskin's negligence cause of action on its determination Briskin could not establish the Association's allegedly negligent acts proximately caused Briskin's physical injury. While the Association raised this point in its motion below, the Association did not present any evidence negating this element or showing Briskin did not possess and could not reasonably obtain evidence to establish this element. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-855.) The Association, therefore, never met its moving burden on this point.

action may not be based on an implied false promise]; *Taylor v. Taylor* (1944) 66 Cal.App.2d 390, 395 [failure to fulfill an implied promise does not constitute fraud]; but see Wiseman & Reese, Cal. Practice Guide:  Civil Procedure Before Trial Claims & Defenses (The Rutter Group 2014) ¶¶ 5:15 to 5:16, 5:316 [claim for intentional misrepresentation may be based on a representation implied by conduct]; see also, e.g., *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567; *Universal By-Products, Inc. v . City of Modesto* (1974) 43 Cal.App.3d 145, 151.)

V

*Breach of Fiduciary Duty and Constructive Fraud Causes of Action*

Briskin's causes of action for breach of fiduciary duty and constructive fraud require the existence of a duty of disclosure arising from a fiduciary relationship between the Association and Briskin.  (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 395; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131.)  A fiduciary relationship is any relationship "existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party.  Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent."  (*Herbert v. Lankershim* (1937) 9 Cal.2d 409, 483; accord, *Cleveland v. Johnson* (2012) 209 Cal.App.4th 1315, 1338; *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29-30.)  " '[B]efore a person can be charged with a fiduciary

12

obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.' " (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 386; *Cleveland v. Johnson*, *supra*, at p. 1338.)

Here, there is no evidence the Association knowingly undertook to act on behalf of Briskin and for Briskin's benefit. Rather, the evidence shows Briskin undertook to act on behalf of the Association for the mutual benefit of himself and the Association. In addition, Briskin has not cited nor have we located any authority imposing a fiduciary obligation on the Association for Briskin's benefit as a matter of law. A contractual right to contingent compensation is not sufficient to create a fiduciary relationship. (*Wolf v. Superior Court*, *supra*, 107 Cal.App.4th at pp. 30-31.) Thus, Briskin has not established there is a triable issue of material fact as to his breach of fiduciary duty and constructive fraud causes of action.

VI

*Fraudulent Concealment Cause of Action*

Briskin's fraudulent concealment cause of action also requires the existence of a duty of disclosure. Such a duty may arise where the "defendant has made a representation which was likely to mislead due to the nondisclosure, there is active concealment of undisclosed matters, or one party has sole knowledge of or access to material facts and knows such facts are not known to or discoverable by the other

13

party."[5]  (*Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at p. 1130, citing *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 346-347.)

Briskin appears to base his fraudulent concealment cause of action on the theory the Association had a duty to and failed to disclose it did not intend to fulfill its promise to compensate him for his services.  However, as discussed in part I, *ante*, there is no evidence the Association ever made an express promise to compensate him and, as discussed in part IV, *ante*, a fraud cause of action may not be based on an implied false promise.  (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP*, *supra*, 201 Cal.App.4th at p. 376; *Taylor v. Taylor*, *supra*, 66 Cal.App.2d at p. 395.) Briskin, therefore, has not established a triable issue of material fact as to his fraudulent concealment cause of action.

VII

*Protected Documents*

A

Among the interlocutory matters handled by the trial court, the Association moved to disqualify Briskin's counsel because Briskin's counsel refused to return copies of documents the Association claimed were protected by the attorney-client privilege and attorney work product doctrine.  The documents included minutes of a March 2007

---

[5]     Such a duty may also arise from a fiduciary relationship.  (*Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at pp. 1130-1131.)  Briskin does not appear to rely on this source of duty for this cause of action.  To the extent he is, he has failed to establish a triable issue of material fact for the same reasons discussed in part V, *ante*.

executive session meeting, in which the Board decided to form the committee to consider Briskin's compensation request. The documents also included transcripts of interviews conducted by the Association's litigation counsel with two of the Association's former general counsel, Alan Burson and Jane Austin.

The appellate record contains a redacted copy of the executive session minutes. According to the minutes, the meeting was attended by Burson as general counsel and all of the Association's Board members, except Briskin. Stamped at the top of the minutes is the following advisement: "These minutes are protected from disclosure under Civil Code section 1365.2(d)(1)(C) & E and by Attorney-Client Privilege. Do Not Distribute to Other than Current Board Members." The minutes were signed by Burson as "Recording Secretary."

The appellate record also contains excerpts from the transcripts of the interviews with Burson and Austin. The Burson interview lasted approximately two hours and resulted in a 76-page transcript. Excerpts from five of the pages are in the record. The excerpts reflect Burson's recollection Briskin repeatedly requested compensation and the Board repeatedly told him it was not going to compensate him. The excerpts also reflect Burson's lack of knowledge of an express or implied agreement to compensate Briskin.

The Austin interview also lasted approximately two hours and resulted in an 81-page transcript. Excerpts from three of the pages are in the record. The excerpts reflect Austin's lack of information or knowledge of any facts supporting any of Briskin's causes of action.

15

Briskin opposed the motion to disqualify, arguing the executive session minutes were not protected by the attorney-client privilege because Burson recorded them in his capacity as recording secretary rather than in his capacity as general counsel. Briskin additionally argued the Association had impliedly waived any privilege as to the minutes because, during their depositions, two of the Association's Board members testified about some of the legal advice imparted in the executive session (i.e., to form a committee to consider Briskin's compensation request).

As to the transcript of the interview with Burson, Briskin similarly argued the Association had impliedly waived any privilege because it offered Burson's testimony in support of its summary judgment motion. Briskin also argued the crime-fraud exception applied to this transcript because the Association sought Burson's services to deceive Briskin into believing the Association would compensate him.

The trial court denied the motion to disqualify Briskin's counsel and instead ordered his counsel to refrain from using or disseminating the subject documents and to destroy all copies of the subject documents in counsel's possession, custody, or control. The court found the documents were protected by the attorney-client privilege and the attorney work product doctrine. The court further found the Association had not impliedly waived these protections and Briskin had not established the crime-fraud exception to the attorney-client privilege applied.

B

"A trial court's ruling on a disqualification motion is reviewed under the deferential abuse of discretion standard. [Citations.] 'In exercising its discretion, the trial

16

court must make a reasoned judgment that complies with applicable legal principles and policies.' [Citations.] 'The order is subject to reversal only when there is no reasonable basis for the trial court's decision.' [Citation.]

" 'In deciding whether the trial court abused its discretion, "[w]e are . . . bound . . . by the substantial evidence rule." ' [Citation.] The trial court's order is ' "presumed correct; all intendments and presumptions are indulged to support [it]; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive." ' [Citations.] Hence, we presume the trial court found in [prevailing party's] favor on 'all disputed factual issues.' [Citation.] Further, 'where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence.' [Citation.] 'In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' [Citation.] 'If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.' " (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 46-47 (*Clark*).)

"[W]hen a trial court examines a claim that a communication is protected by the attorney-client privilege, '[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., *a communication made in the course of an attorney-client relationship*. [Citations.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply.' " (*Clark*, *supra*, 196 Cal.App.4th at p. 49, quoting *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

The Association met its burden of establishing a prima facie claim of privilege because it provided substantial evidence showing the minutes memorialized an executive session meeting between the Association's then general counsel, Burson, and all of the Association's Board members, excluding Briskin. Briskin contends, however, the minutes are not privileged because Burson recorded them in the capacity of recording secretary and not in the capacity of general counsel.

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." (*Clark*, *supra*, 196 Cal.App.4th at p. 51.) Substantial evidence shows Burson served as the Association's general counsel and participated in the executive session in this capacity. While his signature on the minutes as recording secretary may show he participated in that particular meeting in more than one capacity, it does not show the

dominant purpose of his relationship with the Association was as recording secretary, rather than as general counsel. This is particularly true since Briskin readily acknowledges in his briefs before this court and below that one of the Association's Board members typically served as the Board's recording secretary. Therefore, Briskin has not established the trial court erred in concluding the minutes are privileged.[6]

2

Briskin alternatively contends the Association impliedly waived any protection for the minutes when two Board members testified about the substance of Burson's advice in their depositions. We disagree.

"[T]he attorney-client privilege is retained, even without express assertion thereof, until the holder *voluntarily discloses a substantial part* of the privileged communication or otherwise *unambiguously manifests his consent* for disclosure by others." (*Glade v. Superior Court* (1978) 76 Cal.App.3d 738, 744-745, italics added.) Briskin has the burden of establishing waiver. (*Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 442.) However, he has produced no evidence the Association voluntarily disclosed a substantial part of its communications with Burson during the executive session or unambiguously consented to such disclosure by

---

6    Nothing in our decision is intended to suggest the attorney-client privilege extends to the specific resolution made by the Board during the executive session, as the record does not show the Association intended the specific resolution to be a confidential communication between it and Burson. (Evid. Code, § 954.) Rather, the record shows the Association intended persons not participating in the executive session, particularly the compensation committee, to know of and act in accordance with the resolution.

19

individual Board members. Rather, the record indicates the Association went to great lengths to preserve its privilege after learning Briskin's counsel had obtained a copy of the minutes. Briskin's similar assertion of implied waiver as to the transcript of the Burson interview fails for the same reasons.[7]

## C

Finally, Briskin contends the minutes and transcripts fall with the crime-fraud exception to the attorney-client privilege. (See Evid. Code, § 956 ["There is no [attorney-client privilege] if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or fraud"].) "The crime-fraud exception is 'a very limited exception to the [attorney-client] privilege' and the '*proponent* of the exception bears the burden of proof of the existence of crime or fraud.' [Citations.] 'To trigger the crime-fraud exception, a party must make a prima facie showing that the communication at issue furthered a crime or fraud.' [Citations.] 'Mere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact.' [Citations.] 'A prima facie case is one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence; In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, i.e., the fraud." ' [Citations.] Since the crime-fraud exception applies where 'an attorney's services are

---

7    On appeal, Briskin raises the implied waiver argument as to both the transcript of Burson's interview and the transcript of Austin's interview. Because Briskin did not raise the implied waiver argument as to the transcript of Austin's interview below, he has forfeited the argument as to that transcript on appeal. (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.) Even if he had not forfeited the argument, we reject it for the same reason we reject the argument as to the transcript of Burson's interview.

20

sought to enable a party to plan to commit a fraud, the proponent of the exception need only . . . prove a false representation of material fact, knowledge of its falsity, intent to deceive and the right to rely [on the representation].' [Citations.] '[T]he [proponent] must also establish a reasonable relationship between the fraud and the attorney-client communication.' " (*Action Performance Co. v. Bohbot* (C.D. Cal. 2006) 420 F.Supp.2d 1115, 1119.)

Here, the evidence presented at the time of and viewed most favorably to the trial court's decision on the motion to disqualify shows Burson was the Association's general counsel. The Association met with Burson in an executive session to assist them in responding to a perceived threat by Briskin to ensure the land sale was unsuccessful unless the Association confirmed in writing it would compensate him. Burson's advice to the Association included a recommendation the Association form a committee to determine whether and how much to compensate Briskin, which advice the Association followed. Briskin subjectively believed the formation of the committee meant the Association intended to compensate him. One of the Association's Board members personally thought Briskin may have subjectively believed the formation of the committee meant the Association intended to compensate him.

As this evidence does not show the Association knowingly made a material false representation with an intent to deceive Briskin, Briskin has not established the trial court abused its discretion in determining the crime-fraud exception to the attorney-client privilege did not apply. Given our conclusions regarding Briskin's attorney-client

privilege related claims, we need not address whether the challenged documents are also protected by the attorney work product doctrine.

DISPOSITION

The judgment is reversed as to the causes of action for breach of implied contract and quantum meruit and the matter is remanded to the trial court for further proceedings, consistent with this opinion, as to these causes of action.  The judgment is affirmed in all other respects.  The parties are to bear their own appeal costs.


McCONNELL, P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.

22